

ORIGINAL



FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG 27 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF GEORGIA

# ATLANTA DIVISION

———————————————————— x

CITY OF PONTIAC GENERAL : Civil Action No.
EMPLOYEES' RETIREMENT :
SYSTEM, Individually and on Behalf of : CLASS ACTION
All Others Similarly Situated, :
                                      :
            Plaintiff, : COMPLAINT FOR VIOLATION OF
                                      : THE FEDERAL SECURITIES LAWS
                                      :
  vs.                                 : 1:09-CV-2351 TWT
                                      :
IMMUCOR, INC., GIOACCHINO :
De CHIRICO, JOSEPH E. ROSEN, :
EDWARD L. GALLUP, RICHARD A. :
FLYNT, PATRICK D. WADDY, :
RALPH A. EATZ, ROSWELL S. :
BOWERS, JOHN A. HARRIS and :
DIDIER L. LANSON, :
                                      :
            Defendants. :
———————————————————— x   DEMAND FOR JURY TRIAL

## INTRODUCTION AND OVERVIEW

1.     This is a class action for violations of the anti-fraud provisions of the federal securities laws on behalf of all purchasers of the publicly traded securities of Immucor, Inc. ("Immucor" or the "Company") between October 19, 2005 and April 23, 2009 (the "Class Period"), who were damaged thereby (the "Class").

2.     Immucor develops, manufactures and sells a complete line of reagents and automated systems used primarily by hospitals, clinical laboratories and blood banks in a number of tests performed to detect and identify certain properties of the cell and serum components of human blood prior to blood transfusion.

3.     During the Class Period, defendants materially misrepresented the Company's business operations.  Specifically, defendants failed to disclose that Immucor was operating in violation of the federal antitrust laws of the United States.

4.     On April 24, 2009, the Company issued a press release, which stated in part:

> Immucor, Inc., a global leader in providing automated instrument-reagent systems to the blood transfusion industry, today announced that it received a subpoena from the United States Department of Justice, Antitrust Division, requesting documents for the period beginning September 1, 2000 through the present, pertaining to an investigation of possible violations of the federal criminal antitrust laws in the blood reagents industry.  Immucor intends to fully cooperate with the investigation.

5.    As a result of this disclosure, Immucor's closing stock price dropped from $20.98 on April 23, 2009 to $15.35 the next trading day.  This decrease in Immucor's stock price was a result of the artificial inflation caused by defendants' misleading statements coming out of the stock price.

## JURISDICTION AND VENUE

6.    The claims asserted arise under §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act") and Rule 10b-5.  Jurisdiction is conferred by §27 of the 1934 Act.

7.    Venue is proper pursuant to §27 of the 1934 Act.  Immucor's headquarters are located in Norcross, Georgia, and false statements were made in this District and acts giving rise to the violations complained of occurred in this District.

## THE PARTIES

8.    Plaintiff City of Pontiac General Employees' Retirement System purchased Immucor securities during the Class Period as set forth in the attached certification and was damaged thereby.

9.    Defendant Immucor develops, manufactures and sells a complete line of reagents and automated systems used primarily by hospitals, clinical laboratories and blood banks in a number of tests performed to detect and identify certain properties of

the cell and serum components of human blood prior to blood transfusion. Immucor's stock is traded under the symbol BLUD on the Nasdaq, which is an efficient market.

10.     Defendant Gioacchino De Chirico ("De Chirico") is the Company's President and Chief Executive Officer ("CEO"). De Chirico has served as CEO since September 2006 and also served as CEO for six months in 2004. Previously, De Chirico served as the Company's Director of European Operations and Chief Operating Officer.

11.     Defendant Joseph E. Rosen ("Rosen") was, at all relevant times, a director of the Company and has served as Chairman of the Board of Directors since September 2006.

12.     Defendant Edward L. Gallup ("Gallup") founded the Company in 1982 and served as CEO and Chairman of the Board of Directors until his retirement in September 2006.

13.     Defendant Richard A. Flynt ("Flynt") has served as the Company's Vice President and Chief Financial Officer ("CFO") since December 2007.

14.     Defendant Patrick D. Waddy ("Waddy") served as the Company's Vice President and CFO from August 2005 until December 2007.

15.     Defendant Ralph A. Eatz ("Eatz") was Immucor's Senior Vice President and Chief Scientific Officer throughout the Class Period.

- 3 -

16. Defendant Roswell S. Bowers ("Bowers") was member of Immucor's board of directors throughout the Class Period until he stepped down in November of 2008.

17. Defendant John A. Harris ("Harris") was member of Immucor's board of directors throughout the Class Period until he stepped down in November of 2008.

18. Defendant Didier L. Lanson ("Lanson") was Immucor's Manager of European Operations throughout the Class Period.

19. The defendants named in ¶¶10-18 are referred to herein as the "Individual Defendants."

## SCIENTER

20. During the Class Period, the defendants had both the motive and opportunity to conduct fraud. They also had actual knowledge of the misleading nature of the statements they made or acted in reckless disregard of the true information known to them at the time. In so doing, the defendants participated in a scheme to defraud and committed acts, practices and participated in a course of business that operated as a fraud or deceit on purchasers of Immucor publicly traded securities during the Class Period.

- 4 -

## MATERIALLY FALSE AND MISLEADING STATEMENTS

21.    On October 19, 2005, Immucor filed a Form 10-K with the SEC setting forth the financial results for the fiscal year ending May 31, 2005. The Form 10-K reported revenue for the fiscal fourth quarter of $42.1 million, up 39.2% from $30.2 million in the same period the previous year. Of the $11.8 million total increase in revenues, approximately $9.8 million came from price increases, approximately $1.5 million came from volume increases, and $0.5 million came from the effect of the change in the Euro exchange rate. Net income for the fourth quarter was a record $9.2 million versus net income of $3.4 million for the same quarter the previous year. Diluted earnings per share totaled $0.19 on 47.7 million weighted average shares outstanding compared to $0.07 on 47.4 million weighted average shares outstanding for the same quarterly period the prior year.

22.    The October 19, 2005 Form 10-K was accompanied by certifications signed by defendants Gallup and Waddy which stated:

I, Edward L. Gallup [Patrick C. Waddy], certify that:

I have reviewed this annual report on Form 10-K of Immucor, Inc.:

2.    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

- 5 -

3.    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.    The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f) for the registrant and we have:

    a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c)    valuated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    d)    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely

to materially affect, the registrant's internal control over financial reporting; and

5.    The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

   a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

   b)    Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date: October 18, 2004

/s/ Edward L. Gallup
Edward L. Gallup,
Chairman of the Board of Directors (Principal Executive Officer)

*          *          *

## Certification Pursuant to 18 U.S.C. 1350, As Adopted Pursuant to Section 906 of the Sarbanes-Oxley Act of 2002

In connection with the Annual Report on Form 10-K for the period ended May 31, 2005 (the "Report") of Immucor, Inc. (the "Registrant"), as filed with the Securities and Exchange Commission on the date hereof, I certify, to the best of my knowledge, that:

   (1)    The Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

(2)     The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Registrant.

October 18, 2005

/s/ Edward L. Gallup
Edward L. Gallup
Chief Executive Officer

23.     On November 10, 2005, the Company issued a press release entitled

"Immucor Announces Fiscal First Quarter Results and Revises 2006 Guidance,"

which stated in part:

> Immucor, Inc., the global leader in providing automated instrument-reagent systems to the blood transfusion industry, today reported financial results for the fiscal first quarter ended August 31, 2005, and revised its previous guidance for the fiscal year ending May 31, 2006.
>
> Revenue for the fiscal first quarter was a record $42.4 million, up 32.2% from $32.1 million in the same period last year.   The $10.3 million increase in revenues was primarily the result of price increases. Gross margin improved during the quarter to 62.9% up from 57.0% in the prior year quarter.
>
> Net income for the first quarter was $8.0 million, up 61.8% from $4.9 million for the same quarter last year.  Diluted earnings per share totaled $0.17 on 47.7 million weighted average shares outstanding, up from $0.10 on 47.6 million weighted average shares outstanding for the same period last year. All share and per share amounts have been adjusted to reflect the 3-for-2 stock split which was effective for shareholders of record as of November 22, 2004.  Net income for the first quarter was adversely impacted by an increase of $1.5 million in audit and Sarbanes-Oxley compliance costs and by an increase of $0.7 million in legal fees as compared to the same period last year.

24.    On November 10, 2005, Immucor filed a Form 10-Q with the SEC

setting forth the financial results described in the above paragraph. The Form 10-Q

was accompanied by certifications signed by defendants Gallup and Waddy

substantially identical to those quoted above.

25.    On January 5, 2006, the Company issued a press release entitled

"Immucor Announces Record Second Quarter Revenues and Confirms Full Year

Guidance," which stated in part:

> Immucor, Inc., the global leader in providing automated instrument-reagent systems to the blood transfusion industry, today reported financial results for the fiscal second quarter ended November 30, 2005.

> Revenues for the fiscal second quarter were a record $44.0 million, up 34.9% from $32.6 million in the same period last year. The $11.4 million increase was primarily the result of price increases. Gross margin improved during the quarter to a record 64.8% up from 56.1% in the prior year quarter.

> Net income for the second quarter was $8.1 million, up 91.3% from $4.2 million for the same quarter last year. Diluted earnings per share totaled $0.17 on 47.6 million weighted average shares outstanding, up from $0.09 on 47.3 mil-lion weighted average shares outstanding for the same period last year. The previously announced decision to consolidate our manufacturing operations resulted in a restructuring charge of $2.5 million in the quarter. On an after tax basis this charge reduced net income by approximately $1.6 million. Net income for the second quarter was adversely impacted by an increase of $0.4 million in audit and Sarbanes-Oxley compliance costs and by an increase of $0.1 million in legal fees as compared to the same period last year.

26.     On January 6, 2006, Immucor filed a Form 10-Q with the SEC setting

forth the financial results described in the above paragraph. The Form 10-Q was

accompanied by certifications signed by defendants Gallup and Waddy substantially

identical to those quoted above.

27.     On April 5, 2006, the Company issued a press release entitled "Immucor

Announces Record Revenues and Record Earnings," which stated in part:

> Immucor, Inc., the global leader in providing automated instrument-
> reagent systems to the blood transfusion industry, today reported
> financial results for the fiscal third quarter ended February 28, 2006.
>
> Revenues for the fiscal third quarter were a record $47.1 million,
> up 24% from $38.0 million in the same period last year. The $9.1
> million increase was primarily the result of price increases. Gross
> margin improved during the quarter to a record 68.2% up from 63.1% in
> the prior year quarter.
>
> Net income for the third quarter was $11.7 million, up 81% from
> $6.5 million for the same quarter last year. Diluted earnings per share
> totaled $0.25 on 47.1 million weighted average shares outstanding, up
> from $0.14 on 47.6 million weighted average shares outstanding for the
> same period last year. In addition to higher sales and gross margins net
> income for the third quarter was positively impacted by the reversal of a
> $1.0 million bonus accrual recorded in the first and second quarters, and
> by a decrease of $1.0 million in legal fees as compared to the same
> period last year.
>
> *       *       *
>
> "We are extremely pleased with our quarterly and year-to-date
> results," said Edward L. Gallup, Chairman and Chief Executive Officer.
> "All-time highs were achieved in revenues, gross margin, income from
> operations, and net income for both the three-month and the nine-month

periods ended February 28, 2006.   This quarter marked the ninth consecutive quarter of record revenues."

28.    On April 6, 2006, Immucor filed a Form 10-Q with the SEC setting forth the financial results described in the above paragraph.   The Form 10-Q was accompanied by certifications signed by defendants Gallup and Waddy substantially identical to those quoted above.

29.    On July 26, 2006, the Company issued a press release entitled "Immucor Announces Record Fiscal Fourth Quarter and Record Year End Results," which stated in part:

> Immucor, Inc., the global leader in providing automated instrument-reagent systems to the blood transfusion industry, today reported financial results for the fiscal fourth quarter and year ended May 31, 2006.
>
> Revenue for the fiscal fourth quarter was a record $50.0 million, up 19% from $42.1 million in the same period last year.  Of the $7.9 million total increase in revenues, approximately $6.0 million came from price increases, approximately $1.4 million came from our direct presence in Japan, approximately $0.9 million came from volume increases, and the effect of the change in the Euro exchange rate reduced sales by $0.4 million.  Gross margin improved during the quarter to a record 68.4% up from 63.6% in the prior year quarter.
>
> Net income for the fourth quarter was a record $12.1 million, up 41% from $8.5 million for the same quarter last year.  Diluted earnings per share totaled $0.17 on 70.7 million weighted average shares outstanding, up from $0.12 on 71.6 million weighted average shares outstanding for the same period last year. Prior year share and per share amounts have been adjusted to reflect the 3-for-2 stock split affected in

- 11 -

the form of a 50% stock dividend which was distributed on May 15, 2006.

*    *    *

"We are extremely pleased with both our quarterly and annual results," said Edward L. Gallup, Chairman and Chief Executive Officer. "All-time highs were achieved in revenues, gross margin, and net income for both the three-month period and the year ended May 31, 2006. This quarter marked the tenth consecutive quarter of record revenues."

30.    On August 1, 2006, Immucor filed a Form 10-K with the SEC setting forth the financial results described in the above paragraph. The Form 10-K was accompanied by certifications signed by defendants Gallup and Waddy substantially identical to those quoted above.

31.    On October 4, 2006, the Company issued a press release entitled "Immucor Announces Record Fiscal First Quarter Results," which stated in part:

Immucor, Inc., the global leader in providing automated instrument-reagent systems to the blood transfusion industry, today reported financial results for the fiscal first quarter ended August 31, 2006.

Revenue for the fiscal first quarter was a record $51.0 million, up 20% from $42.4 million in the same period last year. Of the $8.6 million total increase in revenues, approximately $4.4 million came from price increases in the United States, approximately $2.4 million came from volume increases in the United States, approximately $1.2 million came from sales increases outside the United States, and the effect of the change in the Euro and Canadian dollar exchange rates increased sales by approximately $0.6 million. Gross margin improved during the quarter to 67.7% up from 62.9% in the prior year quarter.

Net income for the first quarter was a record $12.7 million, up 59% from $8.0 million for the same quarter last year. Diluted earnings per share totaled $0.18 on 70.2 million weighted average shares outstanding, up from $0.11 on 71.6 million weighted average shares outstanding for the same period last year. The adoption on June 1, 2006 of SFAS 123R, related to accounting for stock-based compensation, resulted in a reduction of net income before tax and net income of approximately $0.7 million and $0.5 million, respectively, for the quarter ended August 31, 2006. Prior period share and per share amounts have been adjusted to reflect the 3-for-2 stock split distributed on May 15, 2006.

*     *     *

"We are extremely pleased with our quarterly results," said Edward L. Gallup, Chairman. "All-time highs were achieved in revenues and net income for the quarter. This quarter marked the eleventh consecutive quarter of record revenues."

32.    On October 5, 2006, Immucor filed a Form 10-Q with the SEC setting forth the financial results described in the above paragraph. The Form 10-Q was accompanied by certifications signed by defendants De Chirico and Waddy substantially identical to those quoted above.

33.    On January 3, 2007, the Company issued a press release entitled "Immucor Announces Record Fiscal Second Quarter Results; Raises Fiscal 2007 Revenue and Net Income Guidance," which stated in part:

Immucor, Inc., the global leader in providing automated instrument-reagent systems to the blood transfusion industry, today reported financial results for the fiscal second quarter ended November 30, 2006.

- 13 -

Revenue for the fiscal second quarter was a record $54.4 million, up 24% from $44.0 million in the same period last year. Of the $10.4 million total increase in revenues, approximately $1.0 million came from instrument, warranty and service revenue in the United States, approximately $5.3 million came from price increases in the United States, approximately $1.7 million came from volume increases in the United States, approximately $1.7 million came from sales increases including instrument revenues outside the United States, and the effect of the change in the Euro, Japanese Yen, and Canadian dollar exchange rates increased sales by approximately $0.7 million. Gross margin improved during the quarter to 69.5% up from 64.8% in the prior year quarter.

Net income for the second quarter was a record $14.1 million, up 75% from $8.1 million for the same quarter last year. Diluted earnings per share totaled $0.20 on 70.5 million weighted average shares outstanding, up from $0.11 on 71.5 million weighted average shares outstanding for the same period last year. The prior year quarter was negatively impacted by the decision to consolidate our manufacturing operations which resulted in a restructuring charge of $2.5 million in that period. The adoption on June 1, 2006 of SFAS 123R, related to accounting for stock-based compensation, resulted in a reduction of net income before tax and net income of approximately $0.9 million and $0.7 million, respectively, for the quarter ended November 30, 2006. Prior period share and per share amounts have been adjusted to reflect the 3-for-2 stock split distributed on May 15, 2006.

*    *    *

"We are extremely pleased with our quarterly results," said Dr. Gioacchino De Chirico, President and Chief Executive Officer. "All-time highs were achieved in revenues and net income for the quarter. This quarter marked the twelfth consecutive quarter of record revenues."

34.    On January 5, 2007, Immucor filed a Form 10-Q with the SEC setting forth the financial results described in the above paragraph. The Form 10-Q was

- 14 -

accompanied by certifications signed by defendants De Chirico and Waddy substantially identical to those quoted above.

35.    On April 4, 2007, the Company issued a press release entitled "Immucor Announces Record Fiscal Third Quarter Results," which stated in part:

> Immucor, Inc., a global leader in providing automated instrument-reagent systems to the blood transfusion industry, today reported financial results for the fiscal third quarter ended February 28, 2007.
>
> Revenue for the fiscal third quarter was a record $57.1 million, up 21% from $47.1 million in the same period last year. Of the $10.0 million total increase in revenues, approximately $0.6 million came from volume increases including instrument, warranty and service revenue in the United States, approximately $8.2 million came from price increases in the United States, approximately $0.4 million came from sales increases including instrument revenues outside the United States, and the effect of the change in the Euro, Japanese Yen and Canadian dollar exchange rates increased sales by approximately $0.8 million. Gross margin improved during the quarter to 70.7% up from 68.2% in the prior year quarter.
>
> Net income for the third quarter was a record $15.0 million, up 28% from $11.7 million for the same quarter last year. Diluted earnings per share totaled $0.21 on 71.0 million weighted average shares outstanding, up from $0.17 on 70.6 million weighted average shares outstanding for the same period last year. The adoption on June 1, 2006 of SFAS 123R, related to accounting for stock-based compensation, resulted in a reduction of income before income taxes and net income of approximately $0.8 million and $0.6 million, respectively, for the quarter ended February 28, 2007. Prior period share and per share amounts have been adjusted to reflect the 3-for-2 stock split distributed on May 15, 2006.

*     *     *

- 15 -

"We are extremely pleased with our quarterly results," said Dr. Gioacchino De Chirico, President and Chief Executive Officer. "All-time highs were once again achieved in revenues and net income for the quarter. This quarter marked the thirteenth consecutive quarter of record revenues."

36.　　On April 5, 2007, Immucor filed a Form 10-Q with the SEC setting forth the financial results described in the above paragraph. The Form 10-Q was accompanied by certifications signed by defendants De Chirico and Waddy substantially identical to those quoted above.

37.　　On July 25, 2007, the Company issued a press release entitled "Immucor Announces Record Fiscal Fourth Quarter and Record Year End Results," which stated in part:

> Immucor, Inc., a global leader in providing automated instrument-reagent systems to the blood transfusion industry, today reported financial results for the fiscal fourth quarter and year ended May 31, 2007.
>
> Revenue for the fiscal fourth quarter was a record $61.1 million, up 22% from $50.0 million in the same period last year. Of the $11.1 million total increase in revenues, approximately $2.0 million came from volume increases including instrument, warranty and service revenue in the United States, approximately $7.6 million came from price increases in the United States, approximately $0.7 million came from revenue increases outside the United States including instrument revenues, and the effect of the change in the Euro, Japanese Yen and Canadian dollar exchange rates increased revenue by approximately $0.8 million. Gross margin improved during the quarter to a record 73.7% up from 68.4% in the prior year quarter.

Net income for the fourth quarter was a record $18.2 million, up 51% from $12.1 million for the same quarter last year. Diluted earnings per share totaled $0.26 on 71.0 million weighted average shares outstanding, up from $0.17 on 70.7 million weighted average shares outstanding for the same period last year.

\*       \*       \*

"We are extremely pleased with both our quarterly and annual results," said Dr. Gioacchino De Chirico, President and Chief Executive Officer. "All-time highs were once again achieved in revenues, gross margin, and net income for both the three-month period and the year ended May 31, 2007."

38.    On July 27, 2007, Immucor filed a Form 10-K with the SEC setting forth the financial results described in the above paragraph. The Form 10-K was accompanied by certifications signed by defendants De Chirico and Waddy substantially identical to those quoted above.

39.    On October 3, 2007, the Company issued a press release entitled "Immucor Announces Record Fiscal First Quarter Revenues," which stated in part:

Immucor, Inc., a global leader in providing automated instrument-reagent systems to the blood transfusion industry, today reported financial results for the fiscal first quarter ended August 31, 2007.

Revenue for the fiscal first quarter was a record $63.6 million, up 25% from $51.0 million in the same period last year. Of the $12.6 million total increase in revenues, approximately $1.5 million came from volume increases including instrument, warranty and service revenue in the United States, approximately $8.7 million came from price increases in the United States, approximately $1.6 million came from sales increases including instrument revenues outside the United States, and the effect of the change in the Euro, Japanese Yen and Canadian dollar

- 17 -

exchange rates increased sales by approximately $0.8 million. Gross margin improved during the quarter to 72.1% up from 67.7% in the prior year quarter.

Net income for the first quarter was $17.8 million, up 39% from $12.7 million for the same quarter last year. Diluted earnings per share totaled $0.25 on 71.1 million weighted average shares outstanding, up from $0.18 on 70.2 million weighted average shares outstanding for the same period last year.

\*     \*     \*

"We are pleased with our quarterly results," said Dr. Gioacchino De Chirico, President and Chief Executive Officer. "Revenues and net income were both records for a fiscal first quarter, and revenues were also a record for any fiscal quarter."

40.    On October 5, 2007, Immucor filed a Form 10-Q with the SEC setting forth the financial results described in the above paragraph. The Form 10-Q was accompanied by certifications signed by defendants De Chirico and Waddy substantially identical to those quoted above.

41.    On January 7, 2008, the Company issued a press release entitled "Immucor Announces Fiscal Second Quarter Results," which stated in part:

Immucor, Inc., a global leader in providing automated instrument-reagent systems to the blood transfusion industry, today reported financial results for the fiscal second quarter ended November 30, 2007.

Revenue for the fiscal second quarter was $61.9 million, up 14% from $54.4 million in the same period last year. Of the $7.5 million total increase in revenues, approximately $6.6 million came from price increases in the United States, approximately $0.8 million came from sales increases including instrument revenues outside the United States,

and the effect of the change in the Euro, Japanese Yen and Canadian dollar exchange rates increased sales by approximately $1.9 million. These revenue increases were partially offset by approximately $1.8 million in volume decreases in the United States as compared to the prior year quarter, including approximately $1.0 million resulting from our previously announced decision to cease collagen production. Gross margin was 67.6% in the quarter compared to 69.5% in the prior year quarter. The reduction in gross margin was primarily due to an increase in the number of instruments in the current year quarter as compared to the prior year quarter for which we recognized the cost of the instrument and deferred the revenue.

Net income for the second quarter was $16.2 million, up 15% from $14.1 million for the same quarter last year. Diluted earnings per share totaled $0.23 on 71.1 million weighted average shares outstanding, up from $0.20 on 70.5 million weighted average shares outstanding for the same period last year.

42.    On January 8, 2008, Immucor filed a Form 10-Q with the SEC setting forth the financial results described in the above paragraph. The Form 10-Q was accompanied by certifications signed by defendants De Chirico and Flynt substantially identical to those quoted above.

43.    On April 1, 2008, the Company issued a press release entitled "Immucor Announces Record Fiscal Third Quarter Results," which stated in part:

Immucor, Inc., a global leader in providing automated instrument-reagent systems to the blood transfusion industry, today reported financial results for the fiscal third quarter ended February 29, 2008.

Revenue for the fiscal third quarter was $67.0 million, up 17% from $57.1 million in the same period last year. Of the $9.9 million total increase in revenues, approximately $4.6 million came from price increases in the United States, approximately $1.6 million came from

- 19 -

sales increases including instrument revenues outside the United States, and approximately $2.1 million of the increase is due to the effect of the change in the Euro, Japanese Yen and Canadian dollar exchange rates. Volume increases in the United States totaled $1.6 million as instruments contributed $1.8 million and reagents $0.8 million, partially offset by a $1.0 million reduction in collagen sales resulting from our previously announced decision to cease collagen production.    Gross margin improved to 72.1% in the quarter compared to 70.7% in the prior year quarter.

Net income for the third quarter was $19.3 million, up 28% from $15.0 million for the same quarter last year.    Diluted earnings per share totaled $0.27 on 71.1 million weighted average shares outstanding, up from $0.21 on 71.0 million weighted average shares outstanding for the same period last year.

44.    On April 2, 2008, Immucor filed a Form 10-Q with the SEC setting forth the financial results described in the above paragraph.    The Form 10-Q was accompanied by certifications signed by defendants De Chirico and Flynt substantially identical to those quoted above.

45.    On July 23, 2008, the Company issued a press release entitled "Immucor Announces Record Year End and Fiscal Fourth Quarter Results," which stated in part:

Immucor, Inc., a global leader in providing automated instrument-reagent systems to the blood transfusion industry, today reported financial results for the fiscal fourth quarter and year ended May 31, 2008.

"We are very pleased with our fiscal 2008 financial performance and the record results achieved for revenues, net income and earnings per share," said Dr. Gioacchino De Chirico, President and Chief Executive Officer.    For the year ended May 31, 2008, revenues totaled $261.2 million, an increase of $37.5 million or 17% over the prior year, and net

income was $71.5 million, an $11.4 million increase over the prior year. Diluted earnings per share totaled $1.00 on 71.1 million weighted average shares outstanding for the year ended May 31, 2008 as compared to diluted earnings per share of $0.85 on 70.7 million weighted average shares outstanding for the prior year.

Revenue for the fiscal fourth quarter was a record $68.6 million, up 12% from $61.1 million in the same period last year.  Of the $7.5 million total increase in revenues, approximately $3.7 million came from price increases in the United States, approximately $0.3 million came from sales increases including instrument revenues outside the United States, and approximately $2.5 million of the increase is due to the effect of the change in the Euro, Japanese Yen and Canadian dollar exchange rates.  Volume increases in the United States totaled $1.0 million as instrument increases of $3.0 million were partially offset by reagent decreases of $1.2 million and a decrease in collagen revenues of $0.8 million resulting from our previously announced decision to cease collagen production.  Gross margin was 72.0% in the quarter compared to 73.7% in the prior year quarter.  Gross margin in the fiscal 2008 quarter was negatively impacted by the higher number of instruments expensed in the period as compared to the prior year quarter.

Net income for the fourth quarter of fiscal 2008 was $18.3 million, up slightly from $18.2 million for the same quarter last year.  Net income in the fiscal 2008 quarter was negatively impacted by approximately $0.7 million resulting from the reorganization of our sales and marketing resources in Europe.  Diluted earnings per share totaled $0.26 on 71.1 million weighted average shares outstanding, as compared with $0.26 on 71.0 million weighted average shares out-standing for the same period last year.

*     *     *

"We are very pleased with our quarterly financial results and the number of Echo orders received in North America, which once again exceeded our expectations," said Dr. Gioacchino De Chirico, President and Chief Executive Officer. . . . Commenting further, Dr. De Chirico stated, "All-time highs were achieved in revenues, gross margin, and net

income for the year ended May 31, 2008. Our strategies to grow our business and the execution of our plan continue to generate outstanding results."

46.    On July 24, 2008, Immucor filed a Form 10-K with the SEC setting forth the financial results described in the above paragraph.    The Form 10-K was accompanied by certifications signed by defendants De Chirico and Flynt substantially identical to those quoted above.

47.    On October 1, 2008, the Company issued a press release entitled "Immucor Announces Record Fiscal First Quarter Results," which stated in part:

Immucor, Inc., a global leader in providing automated instrument-reagent systems to the blood transfusion industry, today reported financial results for the fiscal first quarter ended August 31, 2008. Our first quarter 2009 results include the results of BioArray Solutions beginning August 4, 2008, the date the acquisition was consummated.

Revenue for the fiscal first quarter was a record $73.2 million, up 15% from $63.6 million in the same period last year. Of the $9.6 million total increase in revenues, approximately $7.3 million came from price increases in the United States, approximately $2.5 million came from sales increases including instrument revenues outside the United States, and approximately $2.0 million of the increase is due to the effect of the change in the Euro, Japanese Yen and Canadian dollar exchange rates. Partially offsetting these increases were volume decreases of approximately $2.2 million in the United States comprised of instrument increases of approximately $2.5 million offset by reagent decreases of approximately $3.2 million and a decrease in collagen revenues of approximately $1.5 million resulting from our previously announced decision to cease collagen production. Gross margin was 73.0% in the quarter compared to 72.1% in the prior year quarter.

Net income for the first quarter of fiscal 2009 was a record $20.0 million, up from $17.8 million for the same quarter last year. Diluted earnings per share totaled $0.28 on 71.2 million weighted average shares outstanding, as compared with $0.25 on 71.1 million weighted average shares outstanding for the same period last year.

\*       \*       \*

"We are very pleased with our record quarterly financial results and the number of Echo orders received in North America," said Dr. Gioacchino De Chirico, President and Chief Executive Officer. . . . Commenting further, Dr. De Chirico stated, "All-time highs were achieved in revenues, and net income for the quarter as our strategies to grow our business and the execution of our plan once again generated outstanding results."

48.     On October 2, 2008, Immucor filed a Form 10-Q with the SEC setting forth the financial results described in the above paragraph. The Form 10-Q was accompanied by certifications signed by defendants De Chirico and Flynt substantially identical to those quoted above.

49.     On January 7, 2009, the Company issued a press release entitled "Immucor Announces Fiscal Second Quarter Results; Raises Fiscal 2009 EPS Guidance," which stated in part:

Immucor, Inc., a global leader in providing automated instrument-reagent systems to the blood transfusion industry, today reported financial results for the fiscal second quarter ended November 30, 2008.

Financial Highlights

-- Revenue for the fiscal second quarter of 2009 was $73.0 million, up 18% from $61.9 million in the same period last year.

- 23 -

-- Gross margin was 73.3% in the quarter, compared with 67.6% in the prior year quarter.

-- Net income in the quarter was $17.3 million, up from $16.2 million for the same quarter last year.

-- Diluted earnings per share totaled $0.24 in the quarter, compared with $0.23 for the same period last year.

-- During the quarter, the Company repurchased 200,000 shares of its common stock at a total cost of $4.7 million under its stock repurchase program.

"Our second quarter results demonstrate the strength of our business model with its strong recurring revenue and cash flow," stated Dr. Gioacchino De Chirico, President and Chief Executive Officer. "We have what I believe to be the leading technology for automating the blood bank, which positions us well as the market moves towards automation."

50.     On January 8, 2009, Immucor filed a Form 10-Q with the SEC setting forth the financial results described in the above paragraph. The Form 10-Q was accompanied by certifications signed by defendants De Chirico and Flynt substantially identical to those quoted above.

51.     On April 6, 2009, the Company issued a press release entitled "Immucor Announces Fiscal Third Quarter Results," which stated in part:

Immucor, Inc., a global leader in providing automated instrument-reagent systems to the blood transfusion industry, today reported financial results for the fiscal third quarter ended February 28, 2009.

Financial Highlights

- 24 -

-- Revenue for the fiscal third quarter of 2009 was $75.3 million, up 12% from $67.0 million in the same period last year.

-- Gross margin was 71.4% in the quarter, compared with 72.1% in the prior year quarter.

-- Net income in the quarter was $19.5 million, compared with $19.3 million for the same quarter last year.

-- Diluted earnings per share totaled $0.27 in the quarter, compared with $0.27 for the same period last year.

-- Cash flow from operations for the nine months ended February 28, 2009 was $54.0 million, compared with $54.1 million in the prior year period.

"We are pleased with the stability of our performance given the current economic environment," stated Dr. Gioacchino De Chirico, Immucor's President and Chief Executive Officer. "The demand for our reagent products, which account for nearly 90% of our total revenue, has remained stable as shown by our earnings and our cash flow."

52.    On April 7, 2009, Immucor filed a Form 10-Q with the SEC setting forth the financial results described in the above paragraph. The Form 10-Q was accompanied by certifications signed by defendants De Chirico and Flynt substantially identical to those quoted above.

## DEFENDANTS' STATEMENTS WERE
## FALSE AND MISLEADING

53.    Defendants' statements set forth above were materially false and misleading because, during the Class Period, defendants materially misrepresented the

- 25 -

Company's business operations. Specifically, defendants failed to disclose that

Immucor was operating in violation of United States antitrust laws.

## THE TRUTH BEGINS TO COME TO LIGHT

54.    On April 24, 2009, the Company issued a press release, which stated in

part:

> Immucor, Inc., a global leader in providing automated instrument-
> reagent systems to the blood transfusion industry, today announced that
> it received a subpoena from the United States Department of Justice,
> Antitrust Division, requesting documents for the period beginning
> September 1, 2000 through the present, pertaining to an investigation of
> possible violations of the federal criminal antitrust laws in the blood
> reagents industry.    Immucor intends to fully cooperate with the
> investigation.

55.    As a result of this disclosure, Immucor's closing stock price dropped

from $20.98 on April 23, 2009 to $15.35 the next trading day.  This decrease in

Immucor's stock price was a result of the artificial inflation caused by defendants'

misleading statements coming out of the stock price.

## LOSS CAUSATION/ECONOMIC LOSS

56.    During the Class Period, as detailed herein, defendants made false and

misleading statements that artificially inflated Immucor's stock price and operated as

a fraud or deceit on the Class. Later, when defendants' prior misrepresentations and

fraudulent conduct became apparent to the market, Immucor's stock price fell

precipitously, as the prior artificial inflation came out of the stock price over time. As

- 26 -

a result of their purchases of Immucor securities during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## NO SAFE HARBOR

57.    Immucor's verbal "Safe Harbor" warnings accompanying its oral forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.

58.    The defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Immucor who knew that the FLS was false.  None of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## APPLICABILITY OF PRESUMPTION OF
## RELIANCE: FRAUD ON THE MARKET

59.    Plaintiff will rely upon the presumption of reliance established by the

fraud-on-the-market doctrine in that, among other things:

(a)    Defendants made public misrepresentations or failed to disclose

material facts during the Class Period;

(b)    The omissions and misrepresentations were material;

(c)    The Company's stock traded in an efficient market;

(d)    The misrepresentations alleged would tend to induce a reasonable

investor to misjudge the value of the Company's stock; and

(e)    Plaintiff and other members of the Class purchased Immucor stock

between the time defendants misrepresented or failed to disclose material facts and the

time the true facts were disclosed, without knowledge of the misrepresented or

omitted facts.

60.    At all relevant times, the market for Immucor stock was efficient for the

following reasons, among others:

(a)    As a regulated issuer, Immucor filed periodic public reports with

the SEC; and

(b)    Immucor regularly communicated with public investors via

established  market  communication  mechanisms,  including  through  regular

disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts and other similar reporting services.

## CLASS ACTION ALLEGATIONS

61.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased Immucor publicly traded securities during the Class Period. Excluded from the Class are defendants, directors and officers of Immucor and their families and affiliates.

62.    The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Immucor had more than 70 million shares of stock outstanding, owned by thousands of persons.

63.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)    Whether the 1934 Act was violated by defendants;

(b)    Whether defendants omitted and/or misrepresented material facts;

- 29 -

(c)     Whether defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether defendants knew or recklessly disregarded that their statements were false and misleading;

(e)     Whether the prices of Immucor publicly traded securities were artificially inflated; and

(f)     The extent of damage sustained by Class members and the appropriate measure of damages.

64.     Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

65.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

66.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

### For Violation of §10(b) of the 1934 Act
### and Rule 10b-5 Against All Defendants

67.    Plaintiff incorporates ¶¶1-66 by reference.

68.    During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

69.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)    Employed devices, schemes, and artifices to defraud;

(b)    Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Immucor publicly traded securities during the Class Period.

70.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Immucor publicly

traded securities. Plaintiff and the Class would not have purchased Immucor publicly traded securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

71. As a direct and proximate result of these defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Immucor publicly traded securities during the Class Period.

## COUNT II

### For Violation of §20(a) of the 1934 Act Against All Defendants

72. Plaintiff incorporates ¶¶1-71 by reference.

73. The Individual Defendants acted as controlling persons of Immucor within the meaning of §20 of the 1934 Act. By virtue of their positions and their power to control public statements about Immucor, the Individual Defendants had the power and ability to control the actions of Immucor and its employees. Immucor controlled the Individual Defendants and its other officers and employees. By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.    Declaring this action to be a proper class action pursuant to Fed. R. Civ.

P. 23;

B.    Awarding plaintiff and the members of the Class damages and interest;

C.    Awarding plaintiff's reasonable costs, including attorneys' fees; and

D.    Awarding such equitable/injunctive or other relief as the Court may deem

just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  August 27, 2009          COUGHLIN STOIA GELLER
                                   RUDMAN & ROBBINS LLP
                                 JOHN C. HERMAN
                                 Georgia Bar No. 348370
                                 RYAN K. WALSH
                                 Georgia Bar No. 735190


                                 RYAN K. WALSH

                                 Monarch Centre, Suite 1650
                                 3424 Peachtree Road, N.E.
                                 Atlanta, GA  30326
                                 Telephone:  404/504-6500
                                 404/504-6501 (fax)

- 33 -

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
MATTHEW P. MONTGOMERY
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

SULLIVAN, WARD, ASHER &
    PATTON, P.C.
CYNTHIA J. BILLINGS
25800 Northwestern Highway
1000 Maccabees Center
Southfield, MI 48075-1000
Telephone: 248/746-0700
248/746-2760 (fax)

Attorneys for Plaintiff

C:\Documents and Settings\garmstrong\Local Settings\Temporary Internet Files\Cpt Immucor.doc