# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| IN RE IMMUCOR, INC. SECURITIES LITIGATION | Civil Action No. 1:09-CV-2351-TWT |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

John H. Fleming (Ga. Bar No. 263250)
Patricia A. Gorham (Ga. Bar No. 302669)
SUTHERLAND ASBILL &
     BRENNAN LLP
999 Peachtree Street, N.E.
Atlanta, Georgia  30309-3996
Tel.    404.853.8000
Fax    404.853.8806
john.fleming@sutherland.com
patricia.gorham@sutherland.com

*Attorneys for Defendants Immucor, Inc.,*
*Gioacchino De Chirico, Ralph A. Eatz,*
*Joseph E. Rosen, Richard A. Flynt, and*
*Patrick D. Waddy*

Jeffrey O. Bramlett (Ga. Bar No. 075780)
Tiana S. Mykkeltvedt (Ga. Bar No. 533512)
John H. Rains, IV (Ga. Bar No. 556052)
BONDURANT, MIXON & ELMORE LLP
1201 West Peachtree Street, N.W.
Suite 3900
Atlanta, GA 30309
Tel.   404.881.4100
Fax.  404.881.4111
bramlett@bmelaw.com
mykkeltvedt@bmelaw.com
rains@bmelaw.com

*Attorneys for Defendants Edward L. Gallup,*
*Roswell S. Bowers, John A. Harris, and*
*Didier L. Lanson*

# TABLE OF CONTENTS

Table of Authority..................................................................................... iv

Factual Allegations………………………………………………………...…….2

  I.   The FDA Allegations.....................................................................................3

  II.  The Antitrust Allegations ..........................................................................7

Argument and Citation of Authority……………………….……………….10

  I.   All Claims Against Rosen, Flynt, Waddy, Bowers, Harris, And Lanson Should Be Dismissed..................................................................10

  II.  Count I Should Be Dismissed Because Plaintiff Fails To State A Section 10(b) Claim........................................................................10

       A.   Plaintiff Has Not Sufficiently Alleged An Actionable Misstatement Or Omission Of Material Fact. ....................................12

           1.   Plaintiff's FDA-Related Claims Fail To Allege A Misstatement Or Omission With Particularity. .......................14

                a.   Immucor's Statements Regarding The Regulated Nature Of Its Industry Were Neither False Nor Misleading. ................................................................14

                b.   Immucor's Statement Of Belief That Its Quality Control Procedures Conform To Applicable Regulations Is A Forward-Looking Statement...............17

                c.   Immucor's Statements Regarding Its Commitment To Quality Are Not Actionable. ....................................20

                d.   Immucor's Statements That It Experienced Low Staff Turnover Rates Were Neither False Nor Misleading. ................................................................21

                e.   Immucor's Disclosures Relating To The FDA's Inspections Were Neither False Nor Misleading. ..........23

           2.   Plaintiff's Antitrust-Related Claims Fail To Allege A Misstatement Or Omission With Particularity. .......................25

                a.   Plaintiff's Allegations Regarding Ortho's Price-List Do Not Show An Antitrust Violation.....................27

        b.     Plaintiff's Allegations Of Concurrent Price Increases Do Not Show An Antitrust Violation. ............................28

        c.     Plaintiff's Allegations About The Cancellation Of Contracts Do Not Show An Antitrust Violation. ...........30

        d.     Plaintiff's Allegations Related To Immucor's Pre-Class Period Acquisition Strategy And Intercorporate Hiring Do Not Show An Antitrust Violation. ......................................................................31

        e.     Plaintiff's Allegations Related To The Herfindahl-Hirschman Index Do Not Show An Antitrust Violation. ......................................................................32

        f.      The Fact Of A Government Investigation Does Not Show An Antitrust Violation. ..................................32

        g.     All Material Facts Regarding Immucor's Price Increases Were Disclosed. ...............................................33

B.    Plaintiff Fails To Sufficiently Allege Scienter. ...................................35

    1.    Plaintiff Fails To Sufficiently Plead Scienter With Respect To The FDA-Related Claims. .....................................36

        a.     The Confidential Witnesses Do Not Provide The Necessary "Strong Inference" Of Scienter. ....................37

        b.     The Nature Of Immucor's Alleged Misstatements Of FDA Issues Suggest No Intent To Deceive. ..............42

    2.    Plaintiff Fails To Sufficiently Allege Scienter With Respect To The Antitrust-Related Claims. ...............................44

        a.     The Absence Of Specific Factual Allegations Weighs Against A Showing Of Scienter. ........................44

        b.     Immucor's Alleged Receipt Of Ortho's Price List Does Not Support A Showing Of Scienter. ............46

        c.     The Remaining Factual Allegations Do Not Support A Showing Of Scienter. .....................................47

    3.    The Individual Defendants' Sales Of Immucor Stock Do Not Give Rise To A Strong Inference Of Scienter. ............48

C.    Plaintiff Fails To Allege Facts That Will Support A Showing
Of Actual Economic Loss And Loss Causation....................................51

1.    Plaintiff Fails To Adequately Plead Economic Loss
And Loss Causation With Respect To The FDA-Related
Claims. ............................................................................53

2.    Plaintiff Fails To Adequately Plead Loss Causation With
Respect To The Antitrust-Related Claims. ................................57

3.    The Overlapping Corrective Disclosures Render Proof
Of Loss Causation Impossible. ..................................................59

III.  Count II Should Be Dismissed Because Plaintiff Fails To State
A Section 20(A) Claim. ....................................................................62

A.    There Can Be No Section 20(A) Liability Where Plaintiff Fails
To Sufficiently Plead The Underlying Section 10(B) Claim..............62

B.    Plaintiff Does Not Sufficiently Allege That Individual
Defendants Are Controlling Persons..................................................62

IV.   Conclusion. ........................................................................................64

# TABLE OF AUTHORITIES

## CASES

*In re AFC Enters., Inc. Sec. Litig.*, 348 F. Supp. 2d 1363
(N.D. Ga. 2004) ........................................................................48, 49, 50, 51

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995)................................24, 42

*Am. Dental Assoc. v. Cigna Corp.*, No. 09-12033, 2010 WL 1930128
(11th Cir. May 14, 2010) .............................................................................11

*Amalgamated Bank v. The Coca-Cola Co.*, No. Civ. A. 1:05-CV-1226-
RWS, 2006 WL 2818973 (N.D. Ga. Sept. 29, 2006)....................................21

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) .........................................................10, 11

*In re Axis Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576
(S.D.N.Y. 2006)......................................................................................13, 32

*Barr v. Matria Healthcare, Inc.*, 324 F. Supp. 2d 1369 (N.D. Ga. 2004) ..............16

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988) ....................................................13, 34

*In re Bath & Kitchen Fixtures Antitrust Litig.*, No. 05-CV-00510 MAM,
2006 WL 2038605 (E.D. Pa. July 19, 2006) ...............................................33

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)...........................10, 26, 28, 30, 45

*In re Best Buy Co. Sec. Litig.*, No. 03-6193ADMAJB, 2005 WL 839099
(D. Minn. Apr. 12, 2005).............................................................................50

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209
(1993).........................................................................................................29

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364
(11th Cir. 1997) .............................................................................................4

*Brown v. Enstar Group, Inc.*, 84 F.3d 393 (11th Cir. 1996) ...................................62

*Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 (11th Cir. 1999).............................11

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997)...............56

*Campo v. Sears Holdings Corp.*, No. 09-3589-CV, 2010 WL 1292329
    (2d Cir. Apr. 6, 2010) ..................................................................................27

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548 (11th Cir. 1998)..........30

*In re Coca-Cola Enters. Inc. Litig.*, No. 1:06-CV-0275-TWT, 2007 WL
    2904160 (N.D. Ga. Oct. 3, 2007) ..................................................................64

*In re Coca-Cola Enters. Sec. Litig.*, 510 F.Supp. 2d 1187
    (N.D. Ga. 2007) ...............................................................4, 26, 45, 52, 59, 62

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005)........................................52, 53

*ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan
    Chase Co.*, 553 F.3d 187 (2d Cir. 2009) ......................................................21

*Garfield v. NDC Health Corp.*, 466 F.3d 1255
    (11th Cir. 2006) ............................................................. 11, 23, 33, 39, 45, 46

*Goldberg v. Freedom Fed. Sav. Bank*, No. 88 C 4787, 1989 WL 8503
    (N.D. Ill. Jan. 31, 1989)................................................................................57

*Grossman v. Novell, Inc.*, 120 F.3d 1112 (10th Cir. 1997) ....................................21

*Harris v. Ivax Corp.*, 182 F.3d 799 (11th Cir. 1999).........................................18, 20

*In re Homebanc Corp. Sec. Litig.*, No. 1:08-CV-1461-TCB, 2010 WL
    1524836 (N.D. Ga. Apr. 13, 2010)......................................................38, 41, 42

*In re Immucor Inc. Sec. Litig.*, No. 1:05-CV-2276-WSD, 2006 WL 3000133
    (N.D. Ga. Oct. 4, 2006) ................................................................................50

*Malin v. XL Capital Ltd.*, No. 3:03 CV 2001 PCD, 2005 WL 2146089 (D. Conn. Sept. 1, 2005) ...................................................................................53

*In re Miller Indus., Inc. Sec. Litig.*, 12 F. Supp. 2d 1323 (N.D. Ga. 1998) ......................................................................13, 24, 33, 42

*In re Mirant Corp. Sec. Litig.*, No. 1:02-CV-1467-RWS, 2009 WL 48188 (N.D. Ga. Jan. 7, 2009)..........................................................................13, 32

*Mizarro v. Home Depot, Inc.*, 544 F.3d 1230 (11th Cir. 2008)...................... *passim*

*In re Nat'l Australia Bank Sec. Litig.*, No. 03 Civ 6537 (BSJ), 2006 WL 3844465 (S.D.N.Y. Oct. 25, 2006)...............................................................55

*Phillips v. Scientific-Atlanta*, 374 F.3d 1015 (11th Cir. 2004)...............................36

*Robbins v. Kroger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) ...........................53

*Ross v. Walton*, 668 F. Supp. 2d 32 (D.D.C. 2009)..................................................53

*In re S1 Corp. Sec. Litig.*, 173 F. Supp. 2d 1334 (N.D. Ga. 2001).........................20

*Sante Fe Indus. v. Green*, 430 U.S. 462 (1977)........................................................42

*In re Scientific-Atlanta, Inc. Sec. Litig.*, 239 F. Supp. 2d 1351 (N.D. Ga. 2002) ...................................................................................16, 17

*Skubella v. Checkfree Corp.*, No. 1:07-CV-796-TWT, 2008 WL 1902118 (N.D. Ga. Apr. 25, 2008) ......................................................................13, 46

*In re Spectrum Brands, Inc. Sec. Litig.*, 461 F. Supp. 2d 1297 (N.D. Ga. 2006) ...................................................................................62, 63

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).........................35

*In re Thornburg Mortg., Inc. Sec. Litig.*, No. CIV 07-0815 JB/WDS, 2010 WL 378300 (D.N.M. Jan. 27, 2010)...............................................................63

*Waterford Twp. Gen. Employees Ret. Sys. v. Compucredit Corp.*, No. 1:08-CV-2270-TWT, 2009 WL 4730315 (N.D. Ga. Dec. 4, 2009) ....................12

*Williamson Oil Co. v. Philip Morris USA*, 346 F3d 1287 (11th Cir. 2003) ......29, 30

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194 (11th Cir. 2001).............12, 16, 25, 43

*Zisholtz v. SunTrust Banks, Inc.*, No. 1:08-CV-1287-TWT, 2009 WL 3132907 (N.D. Ga. Sept. 24, 2009) ...............................................................64

## STATUTES

15 U.S.C.A. § 78a-4(a)(3)(A) ...................................................................................2

15 U.S.C.A. §78u-4(a)(3)(B) ...................................................................................2

15 U.S.C.A. §78u-4(b)(1)(B) ................................................................12, 16, 17, 23

15 U.S.C.A. §78u-4(b)(2) .......................................................................................35

15 U.S.C.A. §78u-4(b)(4) .......................................................................................51

15 U.S.C.A. §78u-4(e)(1) .......................................................................................55

15 U.S.C.A. § 78u-5(c)(1) ......................................................................................12

17 C.F.R. § 240.10b-5..............................................................................................11

17 C.F.R. § 240.10b5-1(c) (2000)...........................................................................43

Fed. R. Civ. P 9(b) ..............................................................................................6, 19

Fed. R. Civ. P. 12(b)(6)........................................................................................2, 3

Before the Colleges of Applied Arts and Technology Pension Plan filed its Consolidated Amended Class Action Complaint ("Amended Complaint"), three similar complaints on behalf of the same putative class had been filed by six law firms and four potential lead plaintiffs had vied for control of the litigation. Even with the benefit of those prior complaints, the input of a bevy of plaintiffs' lawyers, and an additional two months of investigation, plaintiff still fails to allege sufficient facts to state a claim against defendants for securities fraud.

Plaintiff's 336 paragraph Amended Complaint spans 184 pages and asserts misrepresentations arising out of defendants' alleged failure to inform the investing public of antitrust violations and alleged failure to disclose details about Immucor's compliance with Federal Drug Administration ("FDA") regulations. Based on an October 2007 letter from the Federal Trade Commission ("FTC") and an April 2009 subpoena from the Department of Justice ("DOJ"), plaintiff leaps to the faulty conclusion that Immucor must have engaged in a price-fixing conspiracy and, therefore, must have misled investors by attributing its economic success to its pricing strategies rather than to the alleged antitrust violation. Of course, neither the FTC nor the DOJ has even alleged, let alone proven, an antitrust violation, and plaintiff's allegation of an antitrust violation is steeped in speculation and conjecture.

Apparently unwilling to rely solely on these thin allegations, plaintiff adds to the Amended Complaint new allegations related to Immucor's compliance with FDA regulations.[1]  While acknowledging that Immucor disclosed the fact and results of FDA inspections, plaintiff contends that Immucor did not devote sufficient resources to remedying its compliance issues and that defendants failed to provide detailed accounts of the company's quality control deficiencies to the investing public.  Plaintiff's claims should be dismissed with prejudice.

## FACTUAL ALLEGATIONS

Immucor supplies blood reagents (products designed to test, match, detect, screen, diagnose, or otherwise identify certain properties of the cell and serum components of human blood) to hospital blood banks, clinical laboratories, and blood donation centers.  (Consolidated Amended Class Action Complaint ("Am. Compl.") ¶ 5.)[2]  The company is regulated by the FDA, and its main competitor in the United States is Ortho-Clinical Diagnostics, Inc. ("Ortho").  (*Id.* ¶¶ 5, 15.)

---

[1]  Plaintiff adds the FDA claims without observing the early notice requirement of the Private Securities Litigation Reform Act of 1995 ("PSLRA").  15 U.S.C.A. § 78a-4(a)(3)(A).  Failure to provide the required notice deprives potential class members of the opportunity to move to serve as lead plaintiff for that claim and deprives the Court of an opportunity to determine the most adequate plaintiff with respect to the FDA claims.  15 U.S.C.A. §78u-4(a)(3)(B).

[2] For purpose of this motion, defendants have accepted as true the allegations of the Amended Complaint.  Fed. R. Civ. P. 12(b)(6).

Immucor's stock is traded on the NASDAQ stock market under the symbol BLUD. (*Id.* ¶ 24.)

On behalf of a putative class of purchasers of Immucor's securities during the period from October 19, 2005 through June 25, 2009, plaintiff identifies 41 allegedly false and misleading statements, the majority of which are contained in annual or quarterly filings with the Securities Exchange Commission ("SEC"), press releases, and conference calls regarding end-of-quarter results. Plaintiff identifies four partial corrective statements: an announcement of a Federal Trade Commission ("FTC") investigation into potential antitrust violations (October 26, 2007); an FDA warning letter directed to Immucor (May 13, 2008); a subpoena from the U.S. Department of Justice ("DOJ") in connection with an investigation into potential antitrust violations (April 24, 2009); and an announcement of the FDA's notice of intent to revoke license ("NOIR") (June 26, 2009—after the close of the class period).

## I.    The FDA Allegations

Immucor routinely disclosed throughout the class period that "[t]he FDA regulates all phases of the immunohematology industry"; that "[t]he manufacture and sale of blood banking products is a highly regulated business and is subject to continuing compliance with multiple U.S. . . . statutes, regulations and standards";

that the FDA requires all facilities that manufacture blood banking products to be registered or licensed by the FDA; that "[a]n FDA facility license is issued for an indefinite period of time, subject to the FDA's right to revoke the license"; and that "regulatory obstacles" could materially affect Immucor's results. (Tab A[3] at 3, 8, 15; Am. Compl. ¶¶ 106-09, 118-19, 127-28, 139-40, 149-50, 152, 164-65, 172-73, 180-81, 190-91, 193, 204-05, 213-14, 226-27, 241-43, 245, 256-57, 266-67, 283-85.) Immucor informed investors that the FDA makes plant and facility inspections on an unannounced basis and that past FDA inspections had revealed regulatory deficiencies. (*See* Tab A at 8; Tab B at 10.)

Immucor also reiterated throughout the class period that it "*believes* that its manufacturing and on-going quality control procedures conform to the required statutes, regulations and standards." (Tab A at 8; Tab B at 11; Tab C at 9; Tab D at 9.) These statements, however, are not tantamount to declarations that the company's quality control procedures were without issue. Indeed, Immucor made

---

[3] The annual reports, press releases, letters, and other documents referenced in this brief are included in the Appendix to Defendants' Motion to Dismiss at Tabs A-S. "In assessing a motion to dismiss, a court may take into account matters in the public record, including documents required to be filed . . . with the Securities and Exchange Commission." *In re Coca-Cola Enters. Sec. Litig.*, 510 F.Supp. 2d 1187, 1199 n.4. (N.D. Ga. 2007). The Court may also consider documents referred to by plaintiff in the Amended Complaint that are central to plaintiff's claim. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

specific disclosures about regulatory deficiencies identified in the FDA's 2006, 2008, and 2009 inspections of the company's Norcross facility.  (Am. Compl. ¶¶ 50, 56-57, 65.)[4]

Immucor disclosed, for example, the results of the FDA's March 2006 inspection in its annual Form 10-K filing and reminded investors that the FDA has the authority to revoke Immucor's license.  (Tab B at 10.)  Similarly, Immucor issued a May 13, 2008 press release, announcing the results of the FDA's January 2008 inspection, notifying investors that the FDA had issued a warning letter dated May 2, 2008, and including a link to the FDA's website where the warning letter was posted.  (Tabs E, F.)[5]  In its 2008 Form 10-K, Immucor apprised investors of the risks posed by regulatory violations:

> The discovery of regulatory violations during such an inspection could subject us to significant adverse regulatory actions including warning letters, recalls or seizures of its products, a total or partial shutdown of production, the inability to obtain future marketing clearances or approvals, and withdrawals or suspensions of current products from the market. For example, in May 2008 we received an FDA

---

[4] Immucor also informed investors in its 2005 Form 10-K that the FDA had inspected its Norcross facility in March 2005, had identified several deficiencies, and had the authority to revoke its license.  (Tab A at 9.)

[5] The May 2, 2008 FDA warning letter also is available at: http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2008/ucm1048317.htm.

>warning letter related to certain perceived manufacturing and
>record-keeping problems.

(Am. Compl. ¶ 241; Tab D at 16.)

Immucor announced in a June 26, 2009 press release that as a result of the

2009 inspection the FDA had issued a NOIR.  (Tabs G, H.)[6]  Immucor also

discussed the import of the NOIR in its 2009 Form 10-K and detailed the potential

actions the FDA could take, including, for example, "recalls or seizures of our

products, a total or partial shutdown of production, delays in future marketing

clearances or approvals, and withdrawals or suspensions of our current products

from the market."  (*Id*. at 19, 21.)

Notwithstanding the foregoing disclosures, plaintiff asserts that Immucor's

statements about the FDA's regulation of its business were materially false and

misleading because Immucor lacked a commitment to quality and failed to disclose

this fact and because Immucor's disclosures about the FDA's inspections of its

Norcross, Georgia facility did not provide sufficient detail about the deficiencies

identified by the FDA.  Plaintiff offers the purported statements of confidential

witnesses to allege that defendants lacked a commitment to quality.  Plaintiff

contends that Immucor's lack of commitment to quality is shown by (1) Immucor's

---

[6] The June 25, 2009 NOIR also is posted on the Internet at:
http://www.fda.gov/biologicsbloodvaccines/guidancecomplianceregulatoryinforma
tion/complianceactivities/administrativeactionsbiologics/ucm169265.htm.

refusal to "spend the funds needed to establish quality controls and procedures that would ensure compliance with FDA regulations" (Am. Compl. ¶¶ 73, 41, 44); (2) Immucor's attitude that it was too big to be shut down (*id.* ¶¶ 9-10, 46); (3) Immucor's failure to remedy regulatory deficiencies despite the individual defendants being made aware of the deficiencies by the company's internal quality personnel and by the FDA's inspections (*id.* ¶¶ 48, 59); and (4) Immucor's high turnover rate in its quality department (*id.* ¶¶ 43, 44). Plaintiff's theory appears to be that Immucor misled investors by expressing its belief that its quality control procedures complied with the applicable regulations without also disclosing more detail about the results of the FDA inspections or the day-to-day minutiae of the company's quality control procedures. (*Id.* ¶¶ 293-96, 299-303.)

## II.    The Antitrust Allegations

For many years prior to 2000, reagent "manufacturers [were] facing increased costs of manufacturing while during the same period market prices for blood bank products have decreased." (Tab J at 7.) Beginning in 2000, Immucor took advantage of its "market leadership position in the United States to realign its prices with its costs." (*Id.*; *see also* Am. Compl. ¶ 78.) Immucor disclosed its updated pricing strategy in 2005 when it initiated a plan "to ultimately convert all major group purchasing contracts to standardized tier pricing." (Tab A at 5.)

Immucor repeatedly informed investors throughout the class period in its quarterly and annual filings that its economic success was attributable to its pricing strategy. (*See* Am. Compl. ¶¶ 110-11, 114-16, 120-21, 124-25, 129-30, 135-37, 141-44, 146-48, 154-55, 158-60, 166-70, 174-78, 182-84, 186-88, 195-97, 200-02, 207-11, 228-29, 237-39, 248-49, 252-54, 258-64, 268-69, 276-78, 287-88.)

Plaintiff alleges that, as Immucor implemented its pricing strategy, it was no secret that Ortho also was raising its prices. In the fall of 2000, Ortho announced significant, impending price increases at the American Association of Blood Banks conference. (*Id.* ¶ 80.) Ortho's price increases were implemented prior to Immucor's price increases. (*Id.* ¶ 81.) Both companies continued to increase their prices for various products in varying amounts throughout the decade. (*Id.* ¶ 83.)

Ultimately, Immucor's acquisition and pricing strategies drew the attention of the FTC. On October 12, 2007, the FTC sent Immucor a letter requesting that it "voluntarily provide certain documents and information to the FTC concerning three acquisitions made by Immucor in the period from 1996 through 1999, and concerning Immucor's product pricing activities since then." (Tab K at Ex. 99.1.) The October 12 letter stated that the FTC's focus was "whether Immucor violated federal antitrust laws or engaged in unfair methods of competition through those acquisitions, and whether Immucor or others engaged in unfair methods of

competition by restricting price competition." (*Id.*)  The October 12 letter also made clear that "neither [it] nor the existence of the investigation indicates that the FTC has concluded that Immucor or anyone else has violated the law." (*Id.*) Immucor disclosed the communication and assured investors that it intended to cooperate with the FTC and respond to its request.  (*Id.*)  Two years later, on April 24, 2009,  the United States Department of Justice ("DOJ") issued a document subpoena to Immucor, requesting documents for the period beginning September 1, 2001.  (Ex. L at Ex. 99.1.)

Immucor fully disclosed in its SEC filings the facts upon which plaintiff's allegation of securities fraud relies.  Plaintiff's claim is based on allegations relating to:  (1) "Immucor's acquisition spree" (*id.* ¶ 79); (2) the "simultaneous, substantially similar price increases by Immucor and Ortho" (*id.* ¶¶ 81, 83); (3) Immucor's and Ortho's decision to cancel contracts with group purchasing organizations (*id.* ¶¶ 86-90); (4) the fact that the immunohematology industry is highly concentrated, as evidenced by its Herfindahel-Hirschman Index score (*id.* ¶¶ 91-92); (5) the fact that Immucor and Ortho are both the subject of government investigations (*id*. ¶¶ 93-97); and (6) the fact that two Immucor executives previously held senior positions at Ortho.  (*Id.* ¶¶ 98-100.)  These facts were fully disclosed to the investing public and cannot form the basis of a fraud claim.

## ARGUMENT AND CITATION OF AUTHORITY

**I.    All Claims Against Rosen, Flynt, Waddy, Bowers, Harris, And Lanson Should Be Dismissed.**

In its Amended Complaint, plaintiff elects to proceed against only three of the originally named individual defendants – Dr. Gioacchino De Chirico (President and CEO for a portion of the class period); Edward L. Gallup (Chairman of the Board and CEO for a portion of the class period); and Ralph A. Eatz (Chief Scientific Officer). Other individuals named in the original complaint are not mentioned in the Amended Complaint, and counsel for plaintiff has confirmed that they do not intend to pursue claims against those individuals. The Court should dismiss all claims against Joseph E. Rosen, Richard A. Flynt, Patrick D. Waddy, Roswell S. Bowers, John A. Harris, and Didier L. Lanson.

**II.    Count I Should Be Dismissed Because Plaintiff Fails To State A Section 10(b) Claim.**

To survive a Rule 12(b)(6) motion to dismiss, plaintiff must state factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* (citations omitted).  The *Iqbal* Court outlined a "two-pronged approach" to Rule 12(b)(6) motions:  "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  *Am. Dental Assoc. v. Cigna Corp.*, No. 09-12033, 2010 WL 1930128, at *4 (11th Cir. May 14, 2010) (quoting *Iqbal*, 129 S. Ct. at 1950).  If the factual allegations in the complaint give rise to an inference of lawful conduct that is "at least equally compelling" as an inference of unlawful conduct, the complaint should be dismissed.  *Cigna*, 2010 WL 1930128, at *4 (citing *Iqbal*, 129 S. Ct. at 1951-54).

The elements of a securities fraud claim are well-established:  "1) a misstatement or omission, 2) of a material fact, 3) made with scienter, 4) on which plaintiff relied, 5) that proximately caused his injury."  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (*quoting Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1281 (11th Cir. 1999)).  "This means the who, what, when, where, and how:  the first paragraph of any newspaper story."  *Garfield*, 466 F.3d at 1262.  Plaintiff fails to adequately plead four of these elements – a misrepresentation or omission of material fact, scienter, and loss causation.

### A.    Plaintiff Has Not Sufficiently Alleged An Actionable Misstatement Or Omission Of Material Fact.

The PSLRA requires plaintiff to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C.A. § 78u-4(b)(1)(B).  Federal Rule of Civil Procedure 9(b) further provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Rule 9(b) requires a plaintiff to set forth (1) precisely what statement was made in what document or oral representation (or, in the case of an omission, what omission was made), (2) the time and place of each such statement and the person responsible for making (or, in the case of an omission, for not making) the  statement, (3) the content of the statement and the manner in which the statement was misleading, and (4) what defendants obtained as a consequence of the alleged fraud.  *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

If plaintiff alleges a misstatement or omission "based on the failure to disclose illegal activity, the allegations about the underlying illegal activity must also be stated with particularity."  *Waterford Twp. Gen. Employees Ret. Sys. v. Compucredit Corp.*, No. 1:08-CV-2270-TWT, 2009 WL 4730315, at *5 (N.D. Ga.

Dec. 4, 2009). "Indeed, '[i]f the complaint fails to allege facts which would establish such an illegal scheme, then the securities law claims premised on the *nondisclosure* of the alleged scheme are fatally flawed.'" *In re Mirant Corp. Sec. Litig.*, No. 1:02-CV-1467-RWS, 2009 WL 48188, at *17 (N.D. Ga. Jan. 7, 2009) (quoting *In re Axis Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 585 (S.D.N.Y. 2006)).

Furthermore, to be actionable, a misstatement or omission must reach a materiality threshold. "A misrepresentation or omission is material if there is a 'substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'" *Skubella v. Checkfree Corp.*, No. 1:07-CV-796-TWT, 2008 WL 1902118, at *6 (N.D. Ga. Apr. 25, 2008) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988)). The inquiry is not whether the alleged violation of law is material but rather whether adding additional disclosures to those already made would materially benefit investors. But "[m]ateriality alone is not sufficient to place a company under a duty of disclosure," and the "Federal securities laws do not impose a duty upon parties to admit publicly they *may* be violating the law." *In re Miller Indus., Inc. Sec. Litig.*, 12 F. Supp. 2d 1323, 1331 (N.D. Ga. 1998) (Thrash, J.) (emphasis added).

### 1. Plaintiff's FDA-Related Claims Fail To Allege A Misstatement Or Omission With Particularity.

Plaintiff alleges that Immucor's failure to describe its quality control function as substandard rises to the level of securities fraud.  The statements plaintiff identifies as misleading discuss (1) the regulated nature of the industry; (2) Immucor's belief that its manufacturing and on-going quality control procedures conform to the applicable regulations; (3) Immucor's attribution of its success to execution of its Enterprise Strategy, which included a commitment to quality; and (4) discussions of the turnover rate among Immucor's employees. Plaintiff also asserts that Immucor did not make certain statements regarding the FDA's inspections of its Norcross facility.

> *a.  Immucor's Statements Regarding The Regulated Nature Of Its Industry Were Neither False Nor Misleading.*

Plaintiff alleges that defendants' omissions rendered the following statements about the nature of Immucor's industry materially false and misleading:

- Statements in quarterly filings for 2008 and 2009 that "as part of the immunohematology industry, Immucor was regulated by the FDA" (Amended Compl. ¶¶ 204-05, 213-14, 226-27, 256-57, 266-67);

- Statements in annual filings that "[t]he manufacture of blood banking products is a highly regulated business and is subject to continuing

compliance" with various regulations and that "[a]n FDA license is issued for an indefinite period of time, subject to the FDA's right to revoke the license" (*id.* ¶¶ 106-09, 149-50, 152, 190-91, 193, 241-43, 245);

- Statement in the third quarter 2009 filing that Immucor had implemented a quality process improvement project (*id.* ¶¶ 283-85);

- Statements in quarterly filings that "'regulatory obstacles' were one factor that could cause actual results to differ materially from those expressed in statements made by Immucor" (*id.* ¶¶ 118-19, 127-28, 139-40, 164-65, 172-73, 180-81, 204-05, 213-14, 226-27, 256-57, 266-67, 283-85); and

- Statements in quarterly filings for the first three quarters of 2006 that "the decision to close Immucor's Houston facility 'was driven by a number of factors including, in particular, the expense of operating two FDA licensed manufacturing facilities'" (*id.* ¶¶ 117-18, 127-28, 139-40).

Immucor's statements that it was regulated by the FDA, that an FDA license is subject to revocation, and that regulatory obstacles could affect its results are patently true. And, plaintiff does not even allege that Immucor's statements about the reasons for closing the Houston facility are false. (*Id.* ¶¶ 117-19, 127-28, 139-

40, 283-85.)  Such statements of accurate present or historical fact would only be actionable if Immucor "omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading."  15 U.S.C.A. § 78u-4(b)(1)(B); *see also In re Scientific-Atlanta, Inc. Sec. Litig.*, 239 F. Supp. 2d 1351, 1359 (N.D. Ga. 2002) (Story, J.).

Indeed, plaintiff fails to explain the manner in which any of these statements misled investors, as it is required to do.  *Ziemba*, 256 F.3d at 1202.  Thus, Immucor and the Court are left to speculate about the manner in which these innocuous, straightforward statements might have misled investors.  *See Barr v. Matria Healthcare, Inc.*, 324 F. Supp. 2d 1369, 1377 (N.D. Ga. 2004) (Thrash, J.) ("The policy underlying this provision of the Reform Act is to provide notice of the specific allegedly fraudulent conduct so that the defendant can directly rebut the charge rather than generally deny any wrongdoing.")  To the contrary, Immucor's disclosures seem to have been well designed to put investors on notice of the future risks that FDA regulation entailed for Immucor and others in this industry.  (*See, e.g.,* Tab M at 17; Tab N at 15.)

While plaintiff attempts to identify a litany of omitted "facts" (s*ee*, *e.g.*, Am. Compl. ¶¶ 245, 282-85), those facts have no nexus to the allegedly misleading statements relating to the regulatory environment that plaintiff identifies and

cannot be considered necessary to make Immucor's matter-of-fact statements not misleading. The alleged omissions relate solely to Immucor's efforts to comply with FDA regulations. In contrast, the allegedly misleading statements – that regulatory obstacles could materially affect projected results, that Immucor was heavily regulated by the FDA, and that an FDA license was subject to revocation – relate to the regulated nature of Immucor's industry. (*Id.* ¶¶ 106-09, 118-19, 127-28, 139-40, 149-50, 152, 164-65, 172-73, 180-81, 190-91, 193, 204-05, 213-14, 226-27, 241-43, 245, 256-57, 266-67, 283-85.) Because the alleged omissions bear no nexus to the allegedly misleading statements, their disclosure was not required. 15 U.S.C.A. § 78u-4(b)(1)(B); 17 C.F.R. § 240.10b-5; *In re Scientific-Atlanta, Inc. Sec. Litig.*, 239 F. Supp. 2d at 1359.

> **b.** *Immucor's Statement Of Belief That Its Quality Control Procedures Conform To Applicable Regulations Is A Forward-Looking Statement.*

Immucor's statement of belief that its manufacturing and ongoing quality control procedures conform to the applicable regulations is encompassed in the PSLRA's safe harbor for forward-looking statements. (Am. Compl. ¶¶ 107, 150, 191, 243.) Under the safe harbor provision, defendants are not liable for statements that are "identified as a forward-looking statement" and that are "accompanied by meaningful cautionary statements, identifying important factors

that could cause actual results to differ materially from those in the forward-looking statements." 15 U.S.C.A. § 78u-5(c)(1).

Each of Immucor's annual filings contained a disclaimer of forward-looking statements, which explicitly stated that such statements may contain the word "believe[s]." (Tab A at 15; Tab B at 3, Tab C at 3, Tab D at 3.) Each annual filing further stated that: "In North America, the Company has hired and retained several employees who are highly experienced in FDA and other regulatory authority compliance, and the Company *believes* that its manufacturing and on-going quality control procedures conform to the required statutes, regulations and standards." (Tab A at 8, Tab B at 12, Tab C at 9, 13; Tab D at 9 (emphasis added).) Immucor's statement that it believes its ongoing quality control procedures conform to the applicable regulations is both a question of present condition, and a statement of its belief of continuing compliance with the applicable regulations. The latter statement is "only verifiable by seeing how [Immucor's quality control procedures] hold up in the future," therefore it falls within the PSLRA's safe harbor. *See Harris v. Ivax Corp.*, 182 F.3d 799, 805 (11th Cir. 1999) ("While it is true that the *state* of Ivax's 'fundamental business' and 'underlying strategies' is a question of present condition, whether they are intact is a fact only verifiable by seeing how they hold up in the future.").

Immucor's statements were tempered by meaningful cautionary statements included expressly or by reference in each annual filing, for example, that "[f]actors that could cause actual results to differ materially from those expressed in any forward-looking statement made by, or on behalf of, Immucor include the following . . . product development or regulatory obstacles." (Tab A at 15; *see also* Tab B at 3; Tab C at 3; Tab D at 21.)[7] Each annual filing, in turn, disclosed that Immucor faced the possibility of being ordered by the FDA to cease operations; Immucor described the "manufacture and sale of blood banking products" as a "highly regulated business . . . subject to continuing compliance with multiple U.S. . . . statutes, regulations and standards" and noted that "[a]n FDA facility license is issued for an indefinite period of time, subject to the FDA's right to revoke the license." (Am. Compl. ¶¶ 106, 149, 190, 242.)

Thus, Immucor provided meaningful cautionary statements outlining the potential impact if its belief that its quality control procedures conform to the applicable regulations proved wrong. "When an investor has been warned of risks of a significance similar to that actually realized, she is sufficiently on notice of the

---

[7] Cautionary statements and risk disclosures need not be included in the same document, so long as the "risk disclosures were related to and proximate in time to the alleged misrepresentations." *In re S1 Corp. Sec. Litig.*, 173 F. Supp. 2d 1334, 1354 (N.D. Ga. 2001) (Martin, J.).

danger of the investment to make an intelligent decision about it according to her own preferences for risk and reward." *Harris v. Ivax Corp.*, 182 F.3d at 807. Here, Immucor's cautionary statements place its statements of belief within the PSLRA's safe harbor for forward-looking statements and are not actionable.

> c.    *Immucor's Statements Regarding Its Commitment To Quality Are Not Actionable.*

Plaintiff alleges that Immucor made false and misleading statements by crediting its financial success to its Enterprise Strategy, including the objective to deliver a "high-quality" system.  (Am. Comp. ¶¶ 112-13, 156-57, 198-99, 250-51.) These statements were accompanied by self-congratulatory language generally lauding Immucor's successes.  For instance, in the 2005 Annual Report, Immucor states:

> Our Enterprise Strategy literally drives our day-to-day and year-to-year direction.  Because our hard-working employees have implemented the plan so beautifully, Immucor is rising to new heights.  Therefore, we will stay the course over the upcoming years, confident that our strategy will result in evermore exciting annual reports.

(Tab A at "Dear Fellow Shareholders" letter.)

Such statements of corporate optimism cannot constitute material misstatements under Rule 10b-5.  *See In re S1 Corp. Sec. Litig.*, 173 F. Supp. 2d 1334, 1350-53 (N.D. Ga. 2001) (collecting cases).

> Statements classified as 'corporate optimism' or 'mere puffing' are typically forward-looking statements, or are generalized statements of optimism that are not capable of objective verification. Vague, optimistic statements are not actionable because reasonable investors do not rely on them in making investment decisions.

*Amalgamated Bank v. The Coca-Cola Co.*, No. Civ. A. 1:05-CV-1226-RWS, 2006 WL 2818973, at *3 (N.D. Ga. Sept. 29, 2006) (quoting *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119-20 (10th Cir. 1997)).

Immucor's statements are the same species of "unabashedly optimistic characterizations of [Immucor's] work force, its strategy, its health, and its execution," that "courts have uniformly held not actionable." *Amalgamated Bank*, 2006 WL 2818973, at *5. They are incapable of empirical verification and no reasonable investor could rely on them as a guarantee that Immucor would never fail to meet its stated objective to deliver a high-quality system. *See, e.g., ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009).

> d.    *Immucor's Statements That It Experienced Low Staff Turnover Rates Were Neither False Nor Misleading.*

Plaintiff alleges that Immucor's statements in its 2006, 2007, and 2008 annual filings that it had a low staff turnover rate were materially false and

misleading.  (Am. Compl. ¶¶ 151, 192, 244.)  In those filings, Immucor identified

retention of key personnel as a risk factor relating to the nature of its business:

> Our success is dependent upon the efforts of our senior
> management and staff, including sales, technical and
> management personnel, many of whom have very specialized
> industry and technical expertise that is not easily replaced.  If
> key individuals leave us, we could be adversely affected if
> suitable replacement personnel are not quickly recruited.

(*Id*. ¶244.)  Plaintiff challenges these statements because Immucor did not include

a discussion of a "high-turnover rate in Immucor's quality department and

significant reductions in the headcount of quality control positions."  (*Id.* ¶¶ 153,

194, 246.)

Plaintiff has not alleged facts sufficient to show how Immucor's statements

regarding its low staff turnover rates were misleading.  The Amended Complaint

identifies only one person from Immucor's senior management or staff, John

Adair, who left the company.[8]  (*Id.* ¶ 43.)  The departure of a *single* management

employee does not signify a high turnover rate.  Plaintiff also fails to allege facts to

show how a high turnover rate in one department is inconsistent with Immucor's

statement that it experienced low staff turnover rates company-wide.  Nor does

plaintiff allege that any of the persons who left Immucor's quality department

---

[8] Indeed, plaintiff fails to plead when John Adair left or even whether he left during
the class period.

possessed a type of specialized industry and technical expertise that could not be easily replaced. Plaintiff's allegation that the statements related to staff turnover were materially false and misleading amounts to a conclusory statement of ultimate fact that is not supported by specific allegations.

       *e.*    *Immucor's Disclosures Relating To The FDA's Inspections Were Neither False Nor Misleading.*

Plaintiff complains that after Immucor learned the results of the FDA's inspections, it failed to disclose that the "Company's quality function was deficient and that Immucor was not in material compliance with FDA regulations and was not taking the necessary steps to be in compliance." (Am. Compl. ¶ 134; *see also id.* ¶¶ 131-33, 218-21, 270-73.) Plaintiff does not identify any untrue statements of material fact on this topic and does not tie the alleged omissions to any statements Immucor actually made concerning the FDA inspections. Plaintiff fails, therefore, to satisfy the pleading requirements for an omissions claim; plaintiff fails to show that the omitted material was "necessary in order to make the statements made . . . not misleading." 15 U.S.C.A. § 78u-4(b)(1)(B); *see also Garfield*, 466 F.3d at 1261.

Moreover, the allegation that Immucor misled investors by not disclosing in detail the problems the FDA identified is undercut by the disclosures Immucor

actually made.  Immucor informed investors of each FDA inspection, the results of each FDA inspection, and the serious consequences that could result from non-compliance with FDA regulations.  (*See* Tab B at 10; Tab D at 9; Tab E; Tab G; Tab I at 19, 24.)

Finally, plaintiff's allegation that Immucor was required to inform investors that it was not taking the necessary steps to be in compliance with FDA regulations rests on plaintiff's assumption that Immucor in fact failed to take those steps. What steps were necessary, however, was a matter of Immucor's business judgment.  Even if Immucor's management made a mistake in its judgment, or if the FDA disagreed with the judgment of Immucor's management, such a failure does not subject defendants to liability for securities fraud.  *See Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 53 (2d Cir. 1995) (holding that allegations related to three FDA inspections revealing numerous deficiencies "at most, allege[d] mismanagement of the plant"); *In re Miller Indus., Inc. Sec. Litig.*, 12 F. Supp. 2d at 1332 (holding that Section 10(b) was not designed to regulate alleged corporate mismanagement).

Similarly, plaintiff alleges that Immucor's statements regarding its positive financial results were materially false and misleading because "Defendants refused to expend the necessary funds to materially improve the quality function at the

Company."  (Am. Compl. ¶¶ 111, 116, 121, 125, 130, 137, *see also id.* ¶¶142, 147, 155, 160, 167, 170, 175, 178, 183, 188, 197, 202, 208, 211, 229, 239, 249, 254, 261, 264, 269, 278, 288.) This allegation once again is an impermissible attempt to substitute plaintiff's judgment regarding what expenditures were necessary for the business judgment of Immucor's executives.  Furthermore, it is nothing more than a conclusory statement of ultimate fact – an inference – lacking the requisite foundational specificity.  Plaintiff's allegations of alleged mismanagement fail to state a claim for securities fraud.

> ### 2.    Plaintiff's Antitrust-Related Claims Fail To Allege A Misstatement Or Omission With Particularity.

Plaintiff also fails to plead "the reason or reasons why the statements" Immucor made relating to the alleged antitrust conspiracy are misleading.  *See Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).  To be sure, plaintiff alleges time and again that Immucor "failed to disclose that [its] positive financial results were achieved as a result of collusive anticompetitive behavior in violation of the U.S. antitrust laws."  (*See* Am. Compl. ¶¶ 110-11, 114-16, 120-21, 124-25, 129-30, 135-37, 141-44, 146-48, 154-55, 158-60, 166-70, 174-78, 182-88, 195-97, 200-02, 207-11, 228-29, 237-39, 248-49, 252-54, 258-61, 262-64, 268-69, 276-78, 287-88.)  But plaintiff's conclusory allegation that Immucor was violating the antitrust laws, thereby making Immucor's statements regarding its financial

results misleading, does not suffice to state a claim for securities fraud. Plaintiff is required to allege with particularity the facts underlying Immucor's alleged antitrust conspiracy. *Compucredit*, 2009 WL 4730315, at *5 (finding that if a plaintiff alleges securities fraud as a result of "the failure to disclose illegal activity, the allegations about the underlying illegal activity must also be stated with particularity"); *see also* Fed. R. Civ. P 9(b).

Plaintiff's factual allegations that Immucor violated the antitrust laws are threadbare. Plaintiff does not identify a single instance of collusive behavior between Immucor and Ortho. For example, plaintiff never even alleges an express agreement between the companies to fix prices. *See Twombly*, 550 U.S. at 565 n.10 (expressing doubt that plaintiffs' complaint, setting forth a claim under Section 1 of the Sherman Act, satisfied the Rule 8 pleading standard because it "furnishe[d] no clue as to which of the four [alleged co-conspirators] (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place"). Rather, plaintiff cobbles together miscellaneous facts it claims suggest collusion and invites this Court to speculate that there was wrong-doing. *See In re Coca-Cola Enters. Inc. Sec. Litig.*, 510 F. Supp. 2d at 1199 (allegations regarding "channel stuffing" activity that invited "speculation and conjecture" failed to meet the requirements of Rule 9(b) and the PSLRA).

Plaintiff's failure to actually allege facts to support any illegal agreement between Ortho and Immucor is fatal to its fraud claim.

> ### a.     Plaintiff's Allegations Regarding Ortho's Price-List Do Not Show An Antitrust Violation.

Plaintiff claims that Immucor violated the antitrust laws because Dr. De Chirico received a copy of Ortho's price list prior to the implementation of Ortho's price increases in 2001.  Plaintiff relies on CW2's purported statement that "as a result of [Dr.] De Chirico's friendly relationship and former contacts at Ortho, Ortho had ensured that Immucor received its pricing list in advance of its price increase."  (Am. Compl. ¶ 81.)  Notably, CW2 denies knowing that Immucor received a price list in that fashion.  (Tab S, ¶ 9.)[9]  Even if supported, however, the account would fall short of the level of specificity required by the PSLRA and Rule 9(b).

First of all, plaintiff does not contend that there was any agreement between Ortho and Immucor regarding 2001 price increases.  Plaintiff does not allege that Ortho actually provided its price list to Immucor, but only that Ortho ensured that

---

[9] CW2 does not acknowledge and in fact refutes this statement, as well as several other statements attributed to him in the Amended Complaint.  (*See* Declaration of William Weiss, signed June 25, 2010 (Tab S).)  The Court can consider CW2's declaration "for the limited purpose of determining whether the confidential witnesses acknowledged the statements attributed to them in the complaint" in ruling on the motion to dismiss.  *Campo v. Sears Holdings Corp.*, No. 09-3589-CV, 2010 WL 1292329, at *5 n.4 (2d Cir. Apr. 6, 2010).

Immucor received the price list.  Plaintiff fails to identify the person at Ortho who "ensured that Immucor received its pricing list" or even that there was an agreement between this person and Dr. De Chirico concerning the price list.  In short, the Amended Complaint "furnishes no clue" as to who from Ortho agreed to engage in anticompetitive behavior with Immucor, "or when and where the illicit agreement took place." *Twombly*, 550 U.S. at 565 n.10.  Furthermore, plaintiff provides no factual basis to conclude that the alleged price list exchange in 2001 bears any relation to the prices charged by Immucor during the class period (in 2005 to 2009).  The Supreme Court in *Twombly* indicated that under these circumstances not even Rule 8's notice pleading standard is met.  *Id*.  These allegations, therefore, surely do not meet the heightened pleading standard imposed by the PSLRA.  *Compucredit Corp.*, 2009 WL 4730315, at *5.

> b.     *Plaintiff's Allegations Of Concurrent Price Increases Do Not Show An Antitrust Violation.*

Plaintiff also alleges that the concurrent price increases by Immucor and Ortho during the class period evidence illegal collusion.  In addition to the initial price increase in 2001, plaintiff identifies price increases in 2004, 2005, and 2008.  But plaintiff does not allege that Immucor and Ortho increased their respective prices for competing products at the same time or in the same amount or even that Immucor obtained copies of Ortho's price increases before raising its prices during

the class period.  Instead, plaintiff alleges price increases for a "variety of blood reagents" over a number of years for unspecified products ranging from 24% to 254%.  (Am. Compl. ¶ 83.)  Despite the fact that Immucor and Ortho sell many different blood reagents, varying in costs, demand, and price, plaintiff makes no attempt to identify which reagents were affected by the price increases, or whether the price increases involved similar or competing products.  In fact, the Amended Complaint alleges that the price increases were not uniform.  (Am. Compl. ¶¶ 143, 223.)

Moreover, without any facts to support specific instances of collusive behavior, plaintiff's allegations regarding the price increases amount to at most "conscious parallelism," which the Eleventh Circuit has described as "synchronous actions" that are the "product of a rational, independent calculus by each member of the oligopoly, as opposed to collusion."  *Williamson Oil Co. v. Philip Morris USA*, 346 F3d 1287, 1299 (11th Cir. 2003); *see also Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 237 (1993) ("[R]ising prices do not themselves permit an inference of a collusive market dynamic.").  Conscious parallelism is "a perfectly legal phenomenon."  *Id.* at 1291.  In fact, the Eleventh Circuit recognizes that firms in highly concentrated markets benefit by being price leaders, but do not benefit by cutting prices.  *Id.*  In the Eleventh Circuit, "evidence

of conscious parallelism [alone] does not permit an inference of conspiracy unless the plaintiff [either] establishes that . . . each defendant engaging in the parallel action acted contrary to its economic self-interest or offers other 'plus factors' tending to establish that the defendants were not engaging merely in oligopolistic price maintenance or price leadership but rather in a collusive agreement to fix prices or otherwise restrain trade." *Id.* at 1301 (citing *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 570-71 (11th Cir. 1998); *see also Twombly*, 550 U.S. at 566-68 (finding that parallel conduct is not suggestive of conspiracy). Plaintiff's allegations of concurrent price increases, taken as true, do not support an illegal price-fixing conspiracy.

   c. *Plaintiff's Allegations About The Cancellation Of Contracts Do Not Show An Antitrust Violation.*

   Similarly, the alleged decisions of Immucor and Ortho to cancel the contracts of group purchasing organizations when those organizations would not agree to price increases might suggest conscious parallelism (Am. Compl. ¶¶ 86-90), but do not evince collusive behavior. *Williamson*, 346 F.3d at 1299. Plaintiff's characterization of the cancellations of the group purchasing organization contracts as "highly unusual" and counter to a "competitive market, free of collusion" are contradicted by the Eleventh Circuit's recognition that in a highly concentrated market "attempts to cut prices usually reduce revenue without

increasing any firm's market share, but that simple price leadership in such a market can readily increase all competitors' revenues." *Id.*

> d.    *Plaintiff's Allegations Related To Immucor's Pre-Class Period Acquisition Strategy And Intercorporate Hiring Do Not Show An Antitrust Violation.*

Plaintiff argues that Immucor's acquisition strategy prior to the class period and the hiring by Immucor of two Ortho employees support its allegation of an antitrust conspiracy.  (Am. Compl. ¶¶ 77, 98-100.)  Plaintiff, however, does not contend that these acquisitions were the product of some conspiracy between Immucor and Ortho.  Nor does plaintiff draw any tie between those events and the alleged price-fixing scheme, except to say that the acquisition strategy "primed the industry for collusion" and the inter-corporate hiring "heightens the potential for discussions, communications or meetings between individuals at the two companies" (*Id.* ¶¶ 79, 100).  Plaintiff does not allege a single, specific instance of price-fixing activity that occurred as a result of Immucor allegedly "priming" the industry for collusion or a single discussion, communication, or meeting that occurred as a result of Immucor hiring former Ortho employees.  Rather, plaintiff impermissibly leaves it to the Court to conclude through speculation and conjecture that such events did occur.

e.   *Plaintiff's Allegations Related To The Herfindahl-
     Hirschman Index Do Not Show An Antitrust Violation.*

Allegations of a high Herfindahl-Hirschman Index ("HHI") likewise do not

support an underlying antitrust violation.  (*Id.* ¶¶ 91-92.)  The HHI is a measure of

market concentration, and it is true that collusion is difficult to maintain in

industries that have many players.  In that sense, an industry with fewer players

might be said to be *more* "susceptible" to collusion.  Susceptibility to collusion,

however, is not the standard plaintiff is required to meet: the fact that collusion was

possible does not indicate it occurred.  Plaintiff is required to allege the underlying

illegal activity with particularity, and its failure to do so is fatal to its securities law

claim premised on nondisclosure of the alleged antitrust violations.  *In re Mirant*

*Corp. Sec. Litig.*, 2009 WL 48188, at *17 ("Indeed, '[i]f the complaint fails to

allege facts which would establish such an illegal scheme, then the securities law

claims premised on the *nondisclosure* of the alleged scheme are fatally flawed.'")

(quoting *In re Axis Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d at 585).

f.   *The Fact Of A Government Investigation Does Not Show
     An Antitrust Violation.*

On October 12, 2007, Immucor received a letter from the FTC requesting

that it voluntarily provide documents relating to its acquisition strategy and pricing

activities.  Subsequently, on April 24, 2009, Immucor received a subpoena from

the DOJ. Both events were disclosed. Neither a government investigation nor the belief of a Department of Justice attorney that a crime may have been committed establishes the truth of the very thing being investigated. *See, e.g., In re Bath & Kitchen Fixtures Antitrust Litig.*, No. 05-CV-00510 MAM, 2006 WL 2038605, at **2-7 (E.D. Pa. July 19, 2006) (dismissing antitrust claim for failure to plead concerted action, notwithstanding an allegation that a grand jury investigation had been opened by the DOJ). The existence of an investigation does not show an antitrust violation.

> g.  *All Material Facts Regarding Immucor's Price Increases Were Disclosed.*

Even if it were true (and it is not) that Immucor violated the antitrust laws, a disclosure by Immucor would not have been material. *See, e.g.*, *Garfield*, 466 F.3d at 1261 (providing that elements of Rule 10b-5 claim require that the misstatement or omission be one of material fact). As an initial matter, Immucor did not, and does not, believe that it was violating the antitrust laws. At most, then, Immucor could have disclosed that it *might* be found to be in violation of the antitrust laws. While Immucor had no duty to make such a disclosure, Immucor did disclose the predicate facts upon which plaintiff's allegation of an antitrust conspiracy relies. *In re Miller Indus., Inc. Sec. Litig.*, 12 F. Supp. 2d at 1331 (company has no duty "to admit publicly they may be violating the law"). In this regard, Immucor

disclosed that Ortho "[was] its sole competitor with licenses to manufacture a

complete line of blood banking reagents in the United States" (Tab A at 9), that

part of its strategy was "to increase its prices to align them with its costs" (*id.* at 4),

and that Ortho had raised its prices (Am. Compl. ¶¶ 143 & 210).

Immucor also disclosed the FTC's investigation and the DOJ's subpoena.

(*Id.* ¶¶ 291, 297.)  When it disclosed the FTC's investigation, Immucor made clear

that the focus of the investigation was the "three acquisitions made by Immucor

from 1996 through 1999 and . . . Immucor's product pricing activities since then."

(*Id.* ¶ 291; Ex. K at Ex. 99.1.)  Immucor further stated that "[a]t this time the

company cannot reasonably assess the timing or outcome of the investigation or its

effect, if any, on the company's business."  (*Id.*)  Thus, investors knew:  (1) that

Immucor had one competitor – Ortho; (2) that Immucor's strategy involved raising

its prices; (3) that Ortho was raising its prices; and (4) that, as of October 26, 2007,

there was a possibility that the government might take the position that Immucor's

pricing activities violated the antitrust laws.

Any further disclosure by Immucor that it is possible that it may be found to

be in violation of the antitrust laws would have been superfluous and,

consequently, immaterial; it would not "have altered the 'total mix' of information

made available" to investors. *See Levinson*, 485 U.S. at 231-32 (holding that a

misrepresentation or omission is material if there is a "substantial likelihood that the disclosure of the omitted fact would have . . . altered the 'total mix' of information made available").

### B. Plaintiff Fails To Sufficiently Allege Scienter.

To survive a motion to dismiss under the PSLRA, plaintiff must "state with particularity facts giving rise to a strong inference that Immucor "either intended to defraud investors or [was] severely reckless when [it] made the allegedly materially false or incomplete statements." *Mizarro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008); *see also Bryant,* 187 F.3d at 1282 n.18; 15 U.S.C. § 78u-4(b)(2). The strong inference must be "more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). In determining whether there is a strong inference of scienter, "courts must consider the complaint in its entirety," and "omissions and ambiguities count against inferring scienter." *Id.* at 322, 326; *see also Mizarro*, 544 F.3d at 1238-39. When assessing the allegations of scienter as to Immucor, the Court should look to the state of mind of the individual corporate officers who made or issued the statements. *Id*. at 1254.

### 1.    Plaintiff Fails To Sufficiently Plead Scienter With Respect To The FDA-Related Claims.

Plaintiff attempts to plead scienter with respect to the FDA-related claims by alleging that Dr. De Chirico and Mr. Eatz were on notice throughout the class period of Immucor's quality issues; that there were warnings from the quality control department regarding those quality issues; that minutes from metrics meetings held by the quality control department reflected those quality issues; and that Immucor failed to disclose the results of FDA inspections to investors.  (Am. Compl. ¶¶ 38-74.)[10]  Essentially, plaintiff alleges that Immucor and the individual defendants knew about regulatory deficiencies before and after the FDA's inspections and should have made more extensive disclosures regarding Immucor's efforts to comply with FDA regulations and the results of the FDA's inspections, but failed to do so for the purpose of defrauding investors.  The relevant inquiry as it concerns scienter, though, is not solely what defendants knew or could have disclosed, but is whether defendants intended to defraud investors or were severely reckless in not making more extensive disclosures.  *Mizarro*, 544 F.3d at 1238.

---

[10] The Amended Complaint contains no allegation that Mr. Gallup acted with scienter with respect to the FDA-related claims, and accordingly, the FDA allegations as they relate to Mr. Gallup should be dismissed.  *Phillips v. Scientific-Atlanta*, 374 F.3d 1015, 1017-18 (11th Cir. 2004) (the complaint must allege facts supporting a strong inference of scienter "for each defendant with respect to each violation").

a.    *The Confidential Witnesses Do Not Provide The Necessary "Strong Inference" Of Scienter.*

Plaintiff cites the statements of several confidential witnesses in support of its FDA claims.  The statements cast Immucor as a company that focused its resources on areas other than complying with FDA regulations.  While the alleged statements could raise questions about Immucor's business judgment and corporate management, they do not supply the necessary strong inference of scienter to support a claim for securities fraud.

According to the alleged statements of confidential witness 1 ("CW1"), Immucor "sacrificed quality issues to improve the bottom line" at the direction of Dr. De Chirico, and Immucor "would not spend the funds needed to establish quality controls and procedures that would ensure compliance with FDA regulations."  (Am. Compl. ¶ 73.)  The Amended Complaint cites CW1 as saying that Immucor made this choice because of the company's belief "that the FDA would never shut down Immucor's operations."  (*Id.* ¶ 46.)  Plaintiff alleges that CW1 recounts two instances as support for the proposition that Dr. De Chirico and Mr. Eatz individually harbored this belief.  Plaintiff alleges that Dr. De Chirico told CW1 during their first conversation "if we don't talk to each other, that's a good thing."  (*Id.* ¶ 42.)  Plaintiff alleges that Mr. Eatz expressed his opinion of Immucor's quality function when "he scoffed at the idea that the FDA would ever

revoke Immucor's license and asserted that Immucor's importance in the immunohematology industry would make it impossible for the FDA to shut it down."  (*Id.* ¶ 46.)

CW1's statements are not sufficient to establish scienter.  Where a plaintiff fails to plead specific facts to demonstrate that defendants shared or endorsed their views, courts have found that the import of their statements is severely diluted.  *In re Homebanc Corp. Sec. Litig.*, No. 1:08-CV-1461-TCB, 2010 WL 1524836, at *9 (N.D. Ga. Apr. 13, 2010).  Here, CW1 never even alleges that Immucor or the individual defendants expressed to her that they regarded Immucor's quality function as substandard or that they disregarded the quality function altogether.

Second, the statements of CW1 fail to satisfy the particularity requirements of the PSLRA.  CW1's recollection of Dr. De Chirico's comment to her that "if we don't talk to each other, that's a good thing" is too vague and ambiguous to meet the PSLRA's particularity requirement.  Plaintiff's interpretation of the alleged comment is not the only possible interpretation of the comment nor is it even the most plausible interpretation.  *Mizarro*, 544 F.3d at 1248.  The comment is equally open to an interpretation that Dr. De Chirico was expressing the simple truth that, if no quality problems arose that would be a "good thing" or that Dr. De Chirico actually was exhorting CW1, the newly hired Vice President of Quality, to do a

good job, so that there would be no such quality problems. CW1's interpretation of this ambiguous comment, at any rate, "says precious little, if anything, about the knowledge or intent" of Dr. De Chirico, and nothing about the other individual defendants. *Id*.

Likewise, CW1's account of Mr. Eatz's response to the FDA's May 2008 warning letter is even more vague and unspecific. Plaintiff does not allege when Mr. Eatz "scoffed at the idea that the FDA would ever revoke Immucor's license" except to say that it occurred at some time after Immucor received the May 2008 warning letter. (Am. Compl. ¶ 46.) Nor does plaintiff allege to whom the assertion was made or in what context it was made. *Garfield*, 466 F.3d at 1265 (concluding that allegations about what was said at a meeting involving senior executives was insufficiently particularized where the complaint "failed to allege what was said at the meeting, to whom it was said, or in what context"). Plaintiff's failure to plead these facts about Mr. Eatz's alleged statement undermines any inference of scienter. *Mizarro*, 544 F.3d at 1249 ("All of these gaps in the amended complaint's description of the Plan undermine any inference of scienter that [the plaintiff] hopes to draw from it."). Further, even if the statement was made and reflected Mr. Eatz's actual belief that the FDA would not shut down Immucor, that would not suggest that Mr. Eatz felt it was unnecessary to comply

with the law or the FDA's directives or that Immucor did not undertake to so comply.

Third, plaintiff's attempts to bolster CW1's statements with the statements of three other confidential witnesses – CW2, CW3, and CW4 – fail. CW2 is alleged to have parroted CW1's conclusory statement that "Defendants were not willing to spend the necessary funds to resolve these issues because top management believed Immucor was too big a player in the market for the FDA to ever shut the Company down." (Am. Compl. ¶ 44.) As with CW1's statements, plaintiff does not plead any facts establishing the basis for CW2's statement – which CW2 in any event denies making. (See Tab S, ¶ 11.) The who, what, when and where is left completely to speculation, and there is no detail whatsoever with respect to what money was unspent and what issues were unresolved. The paucity of plaintiff's pleadings relating to CW2's statement is made even more troubling by two additional facts: first, CW2 was a salesperson, presumably not involved with Immucor's quality function; and, second, CW2 was not even an Immucor employee during the class period.

Similarly, CW3 reiterates CW1's statement that "[Mr.] De Chirico did not consider quality a priority" and adds that "Immucor had 'substandard' quality procedures" during CW3's tenure. (*Id.* ¶ 41.) CW3's conclusory statements

cannot give rise to a strong inference of scienter because plaintiff does not plead any facts explaining what led CW3 to draw that conclusion or, more importantly, that Dr. De Chirico shared those views. *See In re Homebanc Corp. Sec. Litig.*, 2010 WL 1524836, at *9.

Finally, CW4 claims that the defendants did not take the deficiencies identified by the FDA in January of 2009 seriously. Notably, plaintiff does not allege that CW4 had any direct interaction with the individual defendants that would enable him to judge whether the individual defendants took the deficiencies identified by the FDA seriously. Moreover, plaintiff does not explain with the required degree of particularity how CW4, as a relatively low-level employee (the manager for the second shift operation for packaging of reagents) would have any first-hand knowledge relevant to Immucor's or the individual defendants' attitude towards Immucor's quality function.

The statements of the confidential witnesses are entitled to little, if any, weight because plaintiff has not provided particularized allegations in connection with the statements of the confidential witnesses that give rise to a strong inference of scienter. *Mizarro*, 544 F.3d at 1240. Moreover, since plaintiff has failed to plead any facts demonstrating that Immucor or the individual defendants supported or endorsed the confidential witnesses' assessments of Immucor's quality function,

the confidential witnesses' assessments "add little to Plaintiff's contentions of fraud." *In re Homebanc Corp. Sec. Litig.*, 2010 WL 1524836, at *9 (Plaintiff's failure to allege any facts demonstrating that defendants agreed with the assessment of a confidential witness adds little to plaintiff's contentions of fraud).

At most, the confidential witnesses' statements reflect a business judgment as to how Immucor managed its finances and quality function. But the confidential witnesses' disagreement with Immucor's business judgment does not subject defendants to liability for securities fraud. The federal securities laws are not designed to address alleged internal corporate mismanagement. *Id.* (collecting cases); *See In re Miller Indus., Inc. Sec. Litig.*, 12 F. Supp. 2d at 1332 (citing *Sante Fe Indus. v. Green*, 430 U.S. 462, 477 (1977)); *see also Acito,* 47 F.3d at 52-53 (finding that allegations regarding multiple FDA inspections identifying multiple deficiencies at most alleged corporate mismanagement and were not actionable under Section 10(b)).

       b.    *The Nature Of Immucor's Alleged Misstatements Of FDA Issues Suggest No Intent To Deceive.*

The nature of plaintiff's allegations on FDA-related issues does not suggest an intent to deceive. First, as discussed above, the bulk of the allegedly false and misleading statements relating to the FDA issues simply describe the regulated nature of the industry and the associated risks. Immucor did not state that its

quality function was beyond reproach, nor did it state that there were no quality issues at the Norcross facility.

Second, Immucor timely disclosed the fact of the FDA inspections and their results.  For instance, in its 2006 Form 10-K, Immucor disclosed that the FDA inspected its Norcross facilities in March 2006 and identified a number of deficiencies.  (Am. Compl. ¶ 149.)  Additional disclosures in Immucor's 2006 Form 10-K signaled to investors the severity of any violation of FDA regulations. (*See, e.g.,* Tab B at 15; Am. Compl. ¶ 149 (describing certain risk factors that could affect its business, including the possibility that "agencies could require us to cease selling that product, or even recall previously-placed products" and that "the FDA and international agencies have the authority to require a recall or modification of products in the event of a defect").)  Not only did Immucor disclose to investors the January 2008 and 2009 FDA inspections through receipt of the May 2008 warning letter and June 2009 NOIR.  The FDA's detailed findings were publicly available, and the availability and severity of potential FDA remedies were again fully described.  (Tabs E-H.)  These disclosures undercut any inference of scienter.  *Ziemba*, 256 F.3d at 1211 ("disclosures actually made . . . significantly undermine any hint of fraud").

**2.    Plaintiff Fails To Sufficiently Allege Scienter With Respect To The Antitrust-Related Claims.**

The Amended Complaint is bereft of any factual allegations of illegal behavior by the individual defendants or allegations that the individual defendants knew of, or were severely reckless in not knowing of, such behavior. *Cf. CompuCredit,* 2009 WL 4730315, at *7 ("A major weakness is that the plaintiff's allegations do not show that the individual defendants knew that CompuCredit's marketing practices were illegal."). Absent some factual showing in support of its conclusory allegations that Immucor was engaged in illegal, price-fixing behavior, plaintiff has not pled with any degree of particularity that Immucor or the individual defendants made any statements regarding Immucor's increased revenues or profits with an intent to defraud or with severe recklessness. *See Mizarro*, 544 F.3d at 1239.

> a.    *The Absence Of Specific Factual Allegations Weighs Against A Showing Of Scienter.*

Significantly, plaintiff does not allege facts showing that Immucor and Ortho agreed, either orally or in writing, to fix prices; that any conversations took place between Immucor and Ortho employees relating to price fixing; or that Immucor or the individual defendants knew or believed that they were fixing prices in violation of the Federal antitrust laws. *See CompuCredit Corp.*, 2009 WL 4730315, at *7

("[t]he plaintiff does not say that there are internal CompuCredit documents that admit liability or even discuss the legality of their marketing practices.  As another example, the plaintiff does not say that there are confidential witnesses who discussed or heard any CompuCredit officials discuss the legality of their marketing practices."); *Twombly*, 550 U.S. at 565 n.10 (noting in an antitrust action that a defendant "would have little idea where to begin" in answering a complaint that did not mention a "specific time, place, or person involved in the alleged conspiracies").  Rather than pleading any facts in direct support of its allegations, plaintiff has bracketed the Amended Complaint with a number of speculative and conclusory factual allegations, stating that each of the individual defendants knew, or were severely reckless in not knowing, of Immucor's alleged antitrust conspiracy.  (Am. Compl. ¶¶ 26, 31, 34, 315, 318-22.)

These conclusory allegations are insufficient to satisfy the pleading standards.  *See Garfield*, 466 F. 3d at 1265 ("It is well established that 'claims of securities fraud cannot rest on speculation and conclusory allegations.'") (citations omitted); *In re Coca-Cola Enters., Inc. Sec. Litig.*, 510 F. Supp. 2d at 1201 (finding conclusory allegations that the defendant had access to the "true facts . . . particularly where the complaint fails to allege 'which defendant knew what, how they knew it, or when,'" and "allegations of motive and opportunity, without

more," to be insufficient to demonstrate the requisite scienter).  Beyond the

"boilerplate recitations endemic to these types of pleadings," *Skubella,* 2008 WL

1902118, at *9, plaintiff does not provide a factual account that would support an

inference, much less the requisite strong inference, that defendants intended to

defraud investors or acted with severe recklessness.

        b.    *Immucor's Alleged Receipt Of Ortho's Price List Does Not Support A Showing Of Scienter.*

Plaintiff's factual allegations regarding the alleged antitrust violations hinge

on the allegation that Immucor received Ortho's price list.  Plaintiff draws its price

list allegation from the purported statements of CW2 that Ortho had somehow

"ensured that Immucor received a copy of Ortho's price list," an account which is

not set forth with the required degree of particularity and even in its conclusory

form is refuted by CW2 (Mr. William Weiss) himself.  (*See* Tab S.)  The Amended

Complaint does not say who gave a price list to whom, when this occurred, or

indeed that there was any direct contact between the parties at all.  *See Garfield*,

466 F.3d at 1265 (plaintiff failed to allege what was said at the meeting, to whom it

was said, or in what context); *Mizarro*, 544 F.3d at 1249 (finding that a

confidential witness' description of a key document to be "so vague that the

allegations about it are not particularized as required by the PSLRA").

   *c.*  *The Remaining Factual Allegations Do Not Support A*
      *Showing Of Scienter.*

  The remaining factual allegations in the Amended Complaint could not lead

a reasonable person to draw an inference of scienter with respect to each individual

defendant as strong as any opposing inferences.  *Id.* at 1239.  The allegations are

that each individual defendant held stock options in 2000 that were under water;

each individual defendant participated in the road show, during which they assured

investors that Immucor would experience increased revenues as a result of planned

price increases; each individual defendant sold shares of Immucor stock during the

class period; and Dr. De Chirico and Mr. Gallup asked CW2 to analyze Immucor's

proposed price increase prior to learning of Ortho's plan to raise prices.  Nothing in

these factual allegations even remotely suggests that Immucor or the individual

defendants engaged in an illegal, price-fixing scheme with Ortho.[11]

  In short, the factual allegations in the Amended Complaint do not permit a

reasonable person to conclude that Immucor and the individual defendants

possessed the requisite scienter.  *Mizarro*, 544 F.3d at 1238.

---

[11] In fact, these allegations support a conclusion that Immucor had decided
independently to raise its prices before Ortho announced its price increase.  (Am.
Compl. ¶¶ 79-80.)  That Immucor announced substantial price increases in the
wake of Ortho's announcement is consistent with both Immucor's internal pricing
strategy, the external, market forces in the immunohematology industry, and
Immucor's financial woes addressed by plaintiff in the Amended Complaint, which
would render any strategy of not raising prices a form of corporate suicide.

### 3.    The Individual Defendants' Sales Of Immucor Stock Do Not Give Rise To A Strong Inference Of Scienter.

Plaintiff attempts to establish a strong inference of scienter for both the antitrust and FDA violations by pointing to stock sales by the individual defendants, which it describes as "highly unusual."  (Am. Compl. ¶¶ 26, 31.) Insider stock sales may contribute to an inference of scienter where a plaintiff can show that the trading activity was unusual.  *In re AFC Enters., Inc. Sec. Litig.*, 348 F. Supp. 2d 1363, 1373 (N.D. Ga. 2004).  "A stock sale may be deemed unusual when it is made at a time or in an amount that suggests that the seller is maximizing personal benefit from inside information."  *Id*.  However, "[s]ignificant gaps in time between a sale of stock and the announcement causing the stock price to decline may diminish the likelihood of scienter."  *Id.*

Plaintiff alleges that the individual defendants' stock sales during the class period were highly unusual for three reasons:  first, the individual defendants sold none, or very little, of their stocks prior to 2002, a year after Immucor began implementing its new pricing strategy; second, Dr. De Chirico and Mr. Eatz sold a number of their stocks just prior to Immucor's announcement that it was being investigated by the FTC; and, third, Mr. Eatz sold 130,000 shares of stock in the months leading up to the FDA's issuance of the NOIR.  (Am. Compl. ¶¶ 101-03.) In all three instances, plaintiff's allegations fall short.

First, it is not at all unusual that the individual defendants sold none or minimal amounts of their stock between 1998 and 2002.  As pointed out by plaintiff, the individual defendants held hundreds of thousands of stock options that were under water during that time.  (*Id.* ¶¶ 18, 77.)  With poor financial results, it would not be at all surprising if the individual defendants decided this was a bad time to sell.  Conversely, when subsequent price increases positively affected Immucor's revenues and profits and Immucor's stock price, it is not surprising that the individual defendants began to sell their stock in Immucor.

Second, contrary to plaintiff's averment, Dr. De Chirico and Mr. Eatz did not sell shares of stock "shortly before" or "just prior" to disclosing that the FTC had commenced an investigation.  Dr. De Chirico sold his stock on July 11, 2007, more than three months prior to Immucor's disclosure of the FTC investigation, and Mr. Eatz sold his stock on August 8, 2007, more than two months prior to the announcement.  The time between the stock sales and the announcement diminishes the likelihood of scienter.  *In re AFC Enters. Inc. Sec. Litig.*, 348 F. Supp. 2d at 1373.  More significantly, the stock sales occurred well before Immucor even received the letter from the FTC, on October 12, 2007, requesting that it voluntarily provide documents, and plaintiff does not allege that either Dr. De Chirico or Mr. Eatz knew of the FTC investigation prior to receipt of the letter.

Nothing about the stock sales otherwise suggests that the individual defendants were using inside information to maximize their personal benefit. *Id*.

Third, Mr. Eatz's sales of stocks beginning in the third quarter of 2008 do not suggest scienter. Beginning in November of 2008, Mr. Eatz began selling stock in blocks of 10,000 shares at fairly regular intervals, *e.g.*, his sales from December 30, 2008 to April 7, 2009 occurred in seven-day intervals.[12] (*See, e.g.*, Tab Q.) Notably, Mr. Eatz began selling stock two months prior to the FDA's January 2009 inspection that identified the violations that ultimately led to the issuance of the NOIR. Even more significant, though, is the fact that Mr. Eatz did not waiver from this pattern after the January 2009 inspection. *See In re Best Buy Co. Sec. Litig.*, No. 03-6193ADMAJB, 2005 WL 839099, at *8 (D. Minn. Apr. 12, 2005) (finding, even in the absence of a Rule 10b5-1 plan, that stock sales that were part of an "apparent pattern" of selling stock on a weekly basis did not raise an inference of scienter); *see also In re Immucor Inc. Sec. Litig.*, No. 1:05-CV-2276-WSD, 2006 WL 3000133, at *18 n.8 (N.D. Ga. Oct. 4, 2006) (finding that allegation of stock sales under a Rule 10b5-1 plan without allegation that

---

[12] In fact, Mr. Eatz was trading pursuant to a Rule 10b5-1 plan, which provides an affirmative defense to allegations of insider trading. 17 C.F.R. § 240.10b5-1(c) (2000).

defendant received an unusual benefit from the stock sales did not bear on whether defendant had requisite scienter).

Finally, plaintiff does not provide any explanation as to why Mr. Gallup's stock sales were highly unusual, except the conclusory allegation that the sales came "while he knew or was severely reckless in not knowing of Immucor's quality issues and the Company's ongoing antitrust conspiracy." (Am. Compl. ¶ 104.) It is not enough, however, merely to label a defendant's stock sales as unusual or suspicious; the plaintiff must provide supporting allegations. *CompuCredit*, 2009 WL 4730315, at *8. Plaintiff's silence with respect to Mr. Gallup is not surprising, because Mr. Gallup's stock sales occurred over a year before Immucor announced that the FTC had commenced its investigation. The gap between Mr. Gallup's stock sales and the announcement removes any likelihood of scienter. *In re AFC Enters. Inc. Sec. Litig.*, 348 F. Supp. 2d at 1373.

### C. Plaintiff Fails To Allege Facts That Will Support A Showing Of Actual Economic Loss And Loss Causation.

Plaintiff is charged with "the burden of proving that the act or omission of the defendant . . . caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C.A. § 78u-4(b)(4). The requirement that a securities fraud plaintiff prove loss causation keeps the securities laws from becoming "broad insurance against market losses" by protecting investors only "against those economic losses that

misrepresentations actually cause." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005).  To adequately plead loss causation, plaintiff must "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Id.* at 347.  In this case, plaintiff must "allege at least that the company's share price fell significantly after the truth of the misrepresentations or omissions became known." *In re Coca-Cola Enters. Inc. Sec. Litig.*, 510 F. Supp. 2d at 1205.  Plaintiff must also allege actual economic loss. *Dura*, 544 U.S. at 344, 346 (noting that securities fraud actions require plaintiff to show "that he suffered actual economic loss").

Plaintiff attempts to meet its burden by pleading four partially corrective statements:  the announcements of the FTC investigation into potential antitrust violations on October 26, 2007; the FDA warning letter on May 13, 2008; the subpoena from the DOJ in connection with an investigation into potential antitrust violations on April 24, 2009; and the FDA's NOIR on June 26, 2009.  (Am. Compl. ¶¶ 289-303.)  Plaintiff has failed to satisfy its obligation to plead economic loss and loss causation with respect to each disclosure, and, furthermore, plaintiff's ability to prove loss causation is thwarted by the overlapping nature of the alleged corrections.

### 1. Plaintiff Fails To Adequately Plead Economic Loss And Loss Causation With Respect To The FDA-Related Claims.

Plaintiff does not plead facts that would support a showing of actual economic loss resulting from the two FDA-related disclosures—the May 13, 2008 announcement of the FDA's warning letter and the June 26, 2009 disclosure of the FDA's NOIR. The economic loss requirement cannot be satisfied by proving that the security was purchased at an artificially inflated price. *Dura*, 544 U.S. at 345 (citing *Robbins v. Kroger Props., Inc.*, 116 F.3d 1441, 1448 (11th Cir. 1997)). Indeed, plaintiff is required to do more than show actual economic loss based solely on a drop in a stock's price following the curative disclosure. If the stock price returned to the pre-disclosure levels shortly after the disclosure, plaintiff must allege a sale during the class period that would have realized economic loss. *Malin v. XL Capital Ltd.*, No. 3:03 CV 2001 PCD, 2005 WL 2146089, at *4 (D. Conn. Sept. 1, 2005) ("If the current value is commensurate to the purchase prices, there is no loss, regardless of whether the purchase price was artificially inflated."); *see also Ross v. Walton*, 668 F. Supp. 2d 32, 43 (D.D.C. 2009) ("However, the Court is unaware of any authority in which actual economic loss was found when the stock value returned to pre-disclosure prices and could have been sold at a profit just after the class period.").

Here, plaintiff owned no Immucor stock prior to the May 2008 disclosure and sold no stock within the class period following the June 2009 disclosure. Indeed, the June 2009 disclosure occurred on June 26, 2009—the day after the end of the class period.  Plaintiff has not alleged a sale by itself or any of the investors it purports to represent following the May 2008 or June 2009 disclosures (Am. Compl. Schedule A), and the price of Immucor's stock quickly rebounded to pre-disclosure levels after each of the two FDA-related corrective disclosures.  Prior to the May 13, 2008 disclosure, Immucor's stock price was $27.96.  (Tab P; Am. Compl. ¶ 294.)[13]  A little over two months after the disclosure, on July 16, 2008, Immucor's stock price had rebounded to $28.16, and three months after the disclosure, on August 13, 2008, the price had risen to $32.52.  (Tab P.)  Similarly, prior to the June 26, 2009 disclosure, Immucor's stock price was $16.09.  (*Id.*; Am. Compl. ¶ 300.)  Less than a month later, on July 24, 2009, Immucor's stock price had rebounded to $16.41, and three months after the disclosure, on September 25, 2009, the price had risen to $17.26.  (*See id.*)  Investors, therefore, could have sold their shares for a profit in the months following the disclosures, and plaintiff has failed to plead "actual economic loss."  *Ross*, 668 F. Supp. 2d at 43 (finding that the "'actual economic loss' contemplated in *Dura* [was] precluded" where the

---

[13] *See* http://finance.yahoo.com/q/hp?s=BLUD+Historical+Prices.

plaintiffs had not alleged a post-disclosure sale and the plaintiffs could have sold the stock at a profit five months after the disclosure).

In addition, the PSLRA limits plaintiff's damages to the "difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." 15 U.S.C.A. § 78u-4(e)(1). Applying the 90-day look-back period here, the mean trading price of Immucor's stock following the June 26, 2009 disclosure was over $16.60. The mean exceeds not only the price of Immucor's stock on the day prior to the disclosure of receipt of the FDA's NOIR ($16.09) (Am. Compl. ¶ 300), but it also exceeds the highest price per share plaintiff paid for Immucor stock in the period between the April 24, 2009 disclosure that the DOJ had issued a subpoena requesting documents and the June 26, 2009 disclosure ($15.90) (Am. Compl. Schedule A; *see also* Tab P), as well as the closing price of Immucor's stock on all but one day during that period ($16.92 on April 29, 2009). (*Id.*) Thus, plaintiff cannot prove actual economic loss flowing from the June 26, 2009 disclosure. *See In re Nat'l Australia Bank Sec. Litig.*, No. 03 Civ. 6537 (BSJ), 2006 WL 3844465, at **8-9 (S.D.N.Y. Oct. 25, 2006) (granting motion to dismiss where mean trading

price following correction was greater than price at which plaintiff purchased

stock).

Similarly, the mean trading price following the May 13, 2008 disclosure

($27.77) was less than $.20 below the trading price of Immucor's stock the day

before the disclosure ($27.96) (Am. Compl. ¶ 294).  Plaintiff, of course, did not

own any Immucor stock as of May 13, 2008 (Am. Compl. Schedule A), so it was

not damaged by the May 13, 2008 disclosure, but the proximity of the mean

trading price in the 90 days following the disclosure to the price the day before the

disclosure indicates that any damages suffered by Immucor's shareholders would

have been negligible.  Moreover, since the market for Immucor's stock is alleged

to be efficient (Am. Compl. ¶ 308), the "negligible effect" of the May 2008

disclosure on Immucor's stock price indicates that the information in the disclosure

was not important to reasonable investors and, therefore, not material.  *In re*

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1425 (3d Cir. 1997)

(disclosure of information that has a "negligible effect" on a company's stock

price, whose stock was traded on an efficient market, was immaterial and not

actionable).  It follows, then, that the more plausible explanation is that any loss

suffered by investors in the days following the May 2008 disclosure resulted from

typical market fluctuations rather than the revelation of an alleged fraud

perpetrated by the defendants. *See, e.g.*, *Goldberg v. Freedom Fed. Sav. Bank*, No. 88 C 4787, 1989 WL 8503, at *4 (N.D. Ill. Jan. 31, 1989) (finding that a drop in a company's stock price from $29.25 to $25.50 following its announcement that its previous earning statements were erroneous, followed by rising prices and a subsequent price drop caused by a general market decline, was not "suggestive of 'loss causation'").

### 2.    Plaintiff Fails To Adequately Plead Loss Causation With Respect To The Antitrust-Related Claims.

Plaintiff identifies two partially curative statements with respect to its antitrust-related claims:  (1) Immucor's October 26, 2007 disclosure that it had received a letter from the FTC requesting that it voluntarily provide documents and information to the FTC relating to acquisitions made by Immucor between 1996 and 1999 and concerning Immucor's subsequent product pricing activities, and (2) Immucor's April 24, 2009 disclosure that it had received a subpoena from the DOJ, requesting documents for the period beginning September 1, 2000, pertaining to an investigation of possible violations of the federal criminal antitrust laws.  (Am. Compl. ¶¶ 291-92, 297-98.)  Plaintiff alleges that Immucor misled investors by not disclosing prior to these "corrective" disclosures that its financial results were attributable to an alleged antitrust conspiracy, causing its stock price to be artificially inflated.

Neither disclosure, however, was a statement that Immucor participated in an antitrust conspiracy. The disclosures simply alerted investors to the fact that the FTC and, subsequently, the DOJ had requested documents from Immucor as part of investigations into potential antitrust infractions. Although it might be said that these disclosures alerted investors to the fact that some government entity might at some unspecified time in the future allege that Immucor violated the antitrust laws, they do not show that Immucor did in fact commit such a violation.

In fact, the activities being investigated by the FTC and DOJ were widely known prior to both disclosures: Immucor disclosed that it made certain acquisitions in 1999 (Tab O at 2); that Ortho was its sole competitor (Tab A at 9); that part of its strategy was "to increase its prices to align them with its costs" (*id.* at 4); and that Ortho was also raising its prices (*see* Am. Compl. ¶¶ 143, 210). The availability of this information prior to Immucor's October 26, 2007 and April 29, 2009 disclosures strongly indicates that the drop in Immucor's stock prices did not result from an implicit revelation that Immucor was violating the antitrust laws, but instead resulted from the revelation of, and uncertainty created by, the investigations themselves.

Because plaintiff does not properly allege an antitrust violation, plaintiff has failed to set forth facts that would support a finding of loss causation with respect

to the antitrust-related claims.  *In re Coca-Cola Enters. Inc. Sec. Litig.*, 510 F.

Supp. 2d at 1205 (holding that plaintiff must "allege at least that the company's

share price fell significantly after the truth of the misrepresentations or omissions

became known").  Rather than a response to the revelation of the alleged "truth"

that Immucor was engaged in an antitrust conspiracy, the drop in Immucor's stock

price following the October 26, 2007 and April 29, 2009 disclosures at most

reflected the market's reaction to the news of the investigations by the FTC and

DOJ and the possible impact the investigations could have on Immucor's business.

### 3.    The Overlapping Corrective Disclosures Render Proof Of Loss Causation Impossible.

By trying to pursue a securities fraud case containing two very different

substantive alleged frauds, plaintiff renders proof of loss causation impossible.

The overlapping corrective disclosures related on the one hand to the alleged

antitrust violations and on the other hand to the results of FDA inspections prove

self-defeating because plaintiff cannot show loss causation as to any particular

disclosure.  (A demonstrative chart reflecting the timing of the disclosures and the

movement of Immucor's stock prices can be found at Tab R.)

First, regarding the antitrust allegations, plaintiff cannot rely on both the

October 2007 disclosure of the FTC inquiry and the subsequent April 2009 DOJ

subpoena disclosure as corrective disclosures that subject defendants to liability.

Assuming that the October 2007 disclosure of the FTC inquiry related to potential antitrust violations is a corrective disclosure, it should have put any future investors on notice of the potential that Immucor might be accused of having violated the antitrust laws.  All of the factual predicates for plaintiff's antitrust theory (the consolidation of the market and the price increases by both Immucor and Ortho) had occurred and been disclosed as of October 2007.  There were no material facts remaining to be disclosed and so the announcement of the DOJ subpoena in 2009 can only be viewed as cumulative.  Thus, proof of loss causation with respect to the October 2007 disclosure undermines proof of loss causation with respect to the later 2009 disclosure of the DOJ subpoena and the Court should dismiss any antitrust claims arising after the October 2007 disclosure.  Alternatively, if the October 2007 announcement of the FTC inquiry failed to alert investors to the possibility that antitrust charges could be levied against Immucor, then there can be no loss causation with respect to this disclosure at all.  As a result, Plaintiff will have to distinguish the 2009 revelation of the DOJ subpoena as material to investors when the FTC inquiry was not.  Plaintiffs have not undertaken to make this distinction.

Second, measurement of any possible economic impact of the April 2009 disclosure of the DOJ's subpoena is hampered by the intervening disclosure

relating to the FDA investigation. In June 26, 2009, the FDA issued its NOIR Immucor's license. This action occurs about 60 days into the 90 day look-back period following the April 24, 2009 disclosure of the DOJ subpoena. It may be that there is no economic loss associated with the June 2009 FDA disclosure, as argued above; on the other hand, any economic loss attributable to the FDA claims will be distorted by any economic loss that was caused by the April 2009 antitrust-related disclosure.

Third, the announcement of the FDA's warning letter in 2008 intersects the two alleged corrective statements related to the antitrust allegations. Notably, this disclosure has no appreciable impact on the price of Immucor's stock over the 90 day look-back period (the drop in the mean stock price over the 90 day period is less than $.20). Plaintiff cannot establish loss causation with respect to the subsequent 2009 FDA NOIR when the 2008 FDA warning letter cannot be said to have caused any economic loss. Furthermore, because of the overlap between the last two announcements (the April 2009 DOJ subpoena and the June 2009 FDA notice), plaintiff cannot attribute any drop in the stock price to one or the other because of their proximity in time to each other. Adding the FDA-related allegations in a bid to survive a motion to dismiss, plaintiff eliminates its ability to establish loss causation with respect to either set of claims.

III.   **Count II Should Be Dismissed Because Plaintiff Fails To State A Section 20(A) Claim.**

A.   **There Can Be No Section 20(A) Liability Where Plaintiff Fails To Sufficiently Plead The Underlying Section 10(B) Claim.**

Under Section 20(a) of the Exchange Act, controlling person liability can be extended to certain individuals with the power to control the defendant company for securities fraud violations.  In order to state a Section 20(a) claim for control person liability "a plaintiff must allege that: (1) the company violated § 10(b); (2) the defendant had the power to control the general affairs of the company; and (3) the defendant had the power to control the specific corporate policy that resulted in the primary violation."  *In re Spectrum Brands, Inc. Sec. Litig.*, 461 F. Supp. 2d 1297, 1307 (N.D. Ga. 2006); *see also Brown v. Enstar Group, Inc.*, 84 F.3d 393, 396 (11th Cir. 1996).  Because plaintiff cannot sufficiently allege the underlying Section 10(b) violation, the Court also should dismiss the Section 20(a) claim. *See, e.g., Theoharous,* 256 F.3d at 1227; *In re Coca-Cola Enters. Inc. Sec. Litig.*, 510 F. Supp. 2d at 1206.

B.   **Plaintiff Does Not Sufficiently Allege That Individual Defendants Are Controlling Persons.**

Plaintiff also fails to state a claim for control person liability against Mr. Gallup and Mr. Eatz with respect to certain parts of its underlying Rule 10b-5 claim.  Mr. Gallup retired from Immucor on September 7, 2006 and served as a

consultant thereafter.  (Am. Compl. ¶ 33.)  Plaintiff does not allege how Mr. Gallup had the power to control Immucor, or how Mr. Gallup had the power to directly or indirectly control or influence Immucor's pricing strategies or FDA compliance efforts, following his retirement.  Therefore, Mr. Gallup cannot be liable as a control person for any alleged violations of the Exchange Act occurring after September 7, 2006.  *In re Thornburg Mortg., Inc. Sec. Litig.*, No. CIV 07-0815 JB/WDS, 2010 WL 378300, at *30 (D.N.M. Jan. 27, 2010) (finding that CEO that retired prior to allegedly false and misleading statement being made was not subject to control person liability because plaintiff made no allegations that the former CEO continued to control the company).

Mr. Eatz served as Immucor's Chief Scientific Officer and Senior Vice President throughout the class period.  (Am. Compl. ¶ 30.)  Plaintiff does not allege how Mr. Eatz, as the Chief Scientific Officer, had the power to control the general affairs of Immucor during the class period.  Furthermore, plaintiff does not allege how Mr. Eatz had any power whatsoever to control or influence Immucor's pricing strategies.  *In re Spectrum Brands, Inc. Sec. Litig.*, 461 F. Supp. 2d at 1307. Therefore, Mr. Eatz cannot be liable as a control person for any alleged violations of the Exchange Act relating to the alleged antitrust conspiracy.

## IV.    Conclusion.

Plaintiff's threadbare and conclusory allegations of supposed antitrust and FDA regulatory violations do not state a claim under the federal securities laws or pass muster under the applicable pleading standards.  Nor do plaintiff's allegations offer any hint that further amendment could cure these problems.  To the contrary, plaintiff's loss causation allegations defeat both its antitrust and FDA compliance claims.  Defendants Immucor, De Chirico, Eatz, and Gallup therefore request that the Court dismiss the Amended Complaint with prejudice.  *See, e.g., Zisholtz v. SunTrust Banks, Inc.*, No. 1:08-CV-1287-TWT, 2009 WL 3132907, at *7 (N.D. Ga. Sept. 24, 2009) (denying leave to amend complaint where plaintiff did not properly request leave to amend and did not indicate in what manner he would amend the complaint); *In re Coca-Cola Enters. Inc. Litig.*, No. 1:06-CV-0275-TWT, 2007 WL 2904160, at *3 (N.D. Ga. Oct. 3, 2007) (dismissing second amended complaint with prejudice).

All claims against Joseph E. Rosen, Richard A. Flynt, Patrick D. Waddy, Roswell S. Bowers, John A. Harris, and Didier L. Lanson should be dismissed because the Amended Complaint contains no allegations concerning these defendants.

This 25th day of June, 2010.

_/s/ Patricia A. Gorham_
John H. Fleming (Ga. Bar No. 263250)
Patricia A. Gorham (Ga. Bar No. 302669)
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street, N.E.
Atlanta, Georgia  30309-3996
Tel.    404.853.8000
Fax    404.853.8806
john.fleming@sutherland.com
patricia.gorham@sutherland.com
_Attorneys for Defendants Immucor, Inc.,_
_Gioacchino De Chirico, Ralph A. Eatz, Joseph E._
_Rosen, Richard A. Flynt, and Patrick D. Waddy_

Jeffrey O. Bramlett (Ga. Bar No. 075780)
Tiana S. Mykkeltvedt (Ga. Bar No. 533512)
John H. Rains, IV (Ga. Bar No. 556052)
BONDURANT, MIXON & ELMORE LLP
1201 West Peachtree Street, N.W.
Suite 3900
Atlanta, GA 30309
Tel.   404.881.4100
Fax.  404.881.4111
bramlett@bmelaw.com
mykkeltvedt@bmelaw.com
rains@bmelaw.com
_Attorneys for Defendants Edward L. Gallup,_
_Roswell S. Bowers, John A. Harris, and_
_Didier L. Lanson_

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(D)</u>

This is to certify that the foregoing Defendants' Motion to Dismiss the

Consolidated Amended Class Action Complaint has been prepared in Times New

Roman font, 14 point, one of the font and point selections approved by the Court in

Local Rule 5.1C.

This 25th day of June, 2010.

/s/ *Patricia A. Gorham*
Patricia A. Gorham

## <u>CERTIFICATE OF SERVICE</u>

I, Patricia A. Gorham, hereby certify that I electronically filed the

Memorandum In Support of Defendants' Motion to Dismiss with the Court using

the CM/ECF system, which will automatically send email notification of such

filing to all attorneys of record.

This 25th day of June, 2010.

/s/ *Patricia A. Gorham*

Patricia A. Gorham

9096919.5